## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

---

KYLESE PERRYMAN,

                Plaintiff,

v.

CITY OF BLOOMINGTON; DOES 1–10,
individuals that are employees or agents of the
Bloomington Police Department;
DETECTIVE ANDREW RISDALL;
HENNEPIN COUNTY; and DOES 11–20,
individuals that are employees or agents of
Hennepin County,

                Defendants.

**Civ. Case No.: 23-1984**

**COMPLAINT**

**Jury Trial Demanded**

---

Plaintiff, Kylese Perryman, by and through his undersigned attorneys of record, demanding trial by jury of all claims properly triable thereby, for his complaint against Defendants above-named, complains and alleges as follows:

## STATEMENT OF CLAIMS

1.    Plaintiff seeks money damages and equitable relief from Defendants for violating his rights under the U.S. and Minnesota Constitutions as well as Minnesota state tort law.

2.    Defendants carelessly and incorrectly identified Plaintiff Kylese Perryman—a young, Black man—as the perpetrator of a violent felony. Mr. Perryman did not commit the underlying crime at issue. Yet, Defendants arrested, imprisoned, and prosecuted him for this crime without conducting even a basic investigation. Even after Mr. Perryman produced an abundance of evidence proving his alibis and innocence, Defendants continued prosecuting Perryman—based on the deficient identification alone—for months, depriving Perryman of his rights under state and federal law.

3.      The Defendants' unlawful conduct violated Plaintiff's rights under the Fourth and Fourteenth Amendment to the U.S. Constitution, Art. 1 § 10 of the Minnesota Constitution, and Minnesota state tort laws. Plaintiff sues under 42 U.S.C. § 1983 and under state law to hold Defendants accountable for their unlawful actions, to seek justice for himself, and to prevent similar unlawful actions from occurring in the future.

## JURISDICTION

4.      This Court has jurisdiction over the claims in this Complaint pursuant to 28 U.S.C. § 1331 (federal question), 28 U.S.C. § 1343 (civil rights), and 42 U.S.C. §§ 1983 and 1988.

5.      This Court has supplemental jurisdiction over the pendent state law claims pursuant to 28 U.S.C. § 1367.

6.      This action arises under the U. S. Constitution, as applied to state and/or local authorities through 42 U.S.C. § 1983.

7.      This Court has authority to grant declaratory relief under 28 U.S.C. § 2201.

8.      The United States District Court for the District of Minnesota includes the county where a substantial part of the events giving rise to the claim occurred, and, thus, venue is proper pursuant to 28 U.S.C. § 1391(b).

## PARTIES

9.      Plaintiff Kylese Perryman is a 21-year-old working father of two young children. He currently resides in Hennepin County, Minnesota.

10.      The City of Bloomington is a municipal and political subdivision of the State of Minnesota and can sue and be sued in its own name. The Bloomington Police Department is a part of the City of Bloomington.

11.     Hennepin County is a municipal and political subdivision of the State of Minnesota that can sue and be sued in its own name.

12.     Defendant Andrew Risdall was, at all times relevant, a detective in the Bloomington Police Department. He is sued in his personal, official, and individual capacities pursuant to Minn. Stat. § 466.01 *et seq.* and other applicable law.

13.     Defendants John/Jane Doe 1–10 are individuals that are employees or apparent employees of the City of Bloomington, specifically working in the Bloomington Police Department. These individuals, upon information and belief, were tasked with the initial arrest of Mr. Perryman. Despite the exercise of due diligence, Plaintiff has been unable to ascertain the true identity of these Defendants, specifically, Plaintiff has been unable to ascertain the true identity of officer No. 260, who assisted in the arrest of Mr. Perryman.

14.     Defendants John/Jane Doe 11–20 are individuals that are employees or apparent employees of Hennepin County, specifically working in the Hennepin County Sheriff's Office CISA division. These individuals, upon information and belief, are tasked with operating, reviewing, analyzing, and making recommendations utilizing CISA's facial recognition software. Despite the exercise of due diligence, Plaintiff has been unable to ascertain the true identity of these Defendants.

15.     All individuals named as Defendants in this Complaint were law enforcement officers, agents, and/or employees of Defendant Hennepin County or City of Bloomington and were, at all times relevant to this complaint, working as on- or off-duty licensed Minnesota peace officers acting under color of state law and within the scope and course of their official duties and employment.

## FACTS

16.     Kylese Perryman—then nineteen years old—was unlawfully arrested, imprisoned, and prosecuted by Defendants Andrew Risdall, the City of Bloomington, Hennepin County, and DOES 1–20 from September 25, 2021, until November 16, 2021, after they carelessly and incorrectly identified him as another Black man. He now brings this Complaint to hold Defendants accountable for their racially charged, improper identification and to recover all damages resulting from the same.

### The underlying robbery

17.     Upon information and belief, on the evening of September 3, 2021, two unknown individuals stole a car from a victim at gunpoint. The victim gave the police a description of the individuals.

18.     Upon information and belief, the next day on the afternoon of September 4, 2021, around 3:57 PM, the same unknown individuals committed a crime at the Mall of America using that stolen vehicle. The individuals in the stolen vehicle approached a group of women in a Mall of America parking ramp. One of the individuals pointed a gun at the women, struck one of the women with the end of the pistol, then took the women's belongings, including a backpack, personal documents, cash, AirPods, car keys, and credit/debit cards.

19.     Upon information and belief, the individuals immediately took the credit/debit cards and used them at a Walmart in Brooklyn Center, Minnesota; the transaction is time-stamped as taking place at 4:45 PM on September 4. Security footage from the Walmart captured images of the assailants.

20.     The crimes at the Mall of America were investigated by Bloomington Police Department detective, Defendant Andrew Risdall.

21.     On September 3, 2021, at the same time as the carjacking, Mr. Perryman was working his scheduled shift at a Target warehouse. He worked from 4:00PM to 2:00AM the next day, and he never clocked out in between these times.

22.     On September 4, 2023, at the same time as the Mall of America robbery, Mr. Perryman slept throughout the day following his night shift, then left to attend a family member's birthday party in Andover—almost 20 miles away from the Brooklyn Center Walmart—around 5:00PM. Mr. Perryman's cell phone data confirmed these whereabouts.

23.     Mr. Perryman was not one of the carjackers or robbers. He was never close to the scene of either crime, and some simple, basic investigation would have clearly shown this.

**The deficient and incorrect identification of Kylese Perryman**

24.     On September 23, 2021, Defendant Risdall compared photographs of the two suspects in the Mall of America crime taken from the Walmart security footage to old Hennepin County booking photos. Puzzlingly, Risdall identified Mr. Perryman as the man in the Walmart photos, despite numerous physical differences to the contrary.

25.     Risdall stated: "I viewed booking photos of Perryman, compared them to the Walmart surveillance photo, and positively identified Mr. Perryman as suspect #1 from the MOA robbery."

26.     This positive identification by Risdall is stated in the initial incident report.

27.     The Walmart photographs/video showed that the suspect had no tattoos on his right forearm. In contrast, Mr. Perryman's booking information with Hennepin County—which Risdall had access to—noted that Mr. Perryman does have tattoos on his right forearm.



*(Photos of suspect #1's forearm from Walmart surveillance footage (left); Photos of Kylese Perryman's forearm (right))*

28.    Defendant Risdall was in possession of photos of the suspect's forearms showing no tattoos and information about Mr. Perryman's forearm tattoos, and yet still concluded that the man in the Walmart photos was Mr. Perryman.

29.    Other physical differences between the real suspect and Mr. Perryman were known at the time Defendant Risdall made his incorrect identification. For example, Mr. Perryman was known to be 6'2" and 135–150 pounds, while the suspect was known to be around 5'9" tall and approximately 35 pounds heavier than Mr. Perryman. The suspect wore his hair in dreadlocks, while Mr. Perryman was last known to wear his hair naturally.

30.    The only apparent similarity between the suspect and Mr. Perryman was that they are both lighter-skinned young Black men.

31.     Despite these two young Black men being completely different people with little to no physical similarities, Defendant Risdall determined that Mr. Perryman was the only suspect.

32.     Defendant Risdall then stopped his investigation.

33.     Defendant Risdall did nothing further to investigate or confirm his suspicions.

34.     Defendant Risdall did not interview Mr. Perryman.

35.     Defendant Risdall did not use any physical evidence to try to confirm that Mr. Perryman performed the robberies.

36.     Defendant Risdall did not follow up with eyewitnesses to confirm that Mr. Perryman performed the robberies.

37.     Risdall did not use photographic or in-person line-ups to confirm that Mr. Perryman performed the robberies.

38.     Defendant Risdall did not seek a search warrant to search Mr. Perryman's home for stolen property to confirm that Mr. Perryman performed the robberies.

39.     Defendant Risdall did not do anything more than look at the photographs of two lighter-skinned young Black men and declare that Mr. Perryman was a violent criminal.

**The KOPS alert regarding Kylese Perryman**

40.     After deciding, despite numerous physical differences, that Mr. Perryman was the only suspect, Defendant Risdall stopped his investigation and issued a "KOPS" alert regarding Mr. Perryman and the Mall of America crimes. Defendant Risdall did not seek a warrant for Mr. Perryman's arrest.

41.     "KOPS" stands for "Keeping Our Police Safe."

42.    "KOPS" is an alert file system which is intended to "enhance[] officer safety by alerting officers of unsafe situations when encountering a vehicle or person involved in a recent incident by disseminating safety information statewide."

43.    Each KOPS alert is to be accompanied by the caveat: "For officer safety purpose only, this is not a warrant."

44.    A KOPS alert is not a warrant, and it is also not sufficient to establish probable cause.

45.    Despite Mr. Perryman having no history of violent crime, the KOPS alert warned law enforcement that Mr. Perryman "IS KNOWN TO BE ARMED AND PISTOL WHIPPED A VICTIM DURING THE ROBBERY."

46.    The incorrect alert was disseminated to law enforcement officers statewide.

47.    The incorrect alert being disseminated to law enforcement officers put Mr. Perryman at risk of dangerous encounters with law enforcement should an officer encounter Mr. Perryman and assume he was violent and dangerous.

**The improper arrest of Kylese Perryman**

48.    On Saturday, September 25, 2021, Mr. Perryman was pulled over by a state trooper, allegedly for driving with expired tabs.

49.    Upon information and belief, having seen the KOPS alert, the trooper contacted the Bloomington Police Department.

50.    The Bloomington Police Department instructed the state trooper to bring Mr. Perryman to them.

51.    The trooper brought Mr. Perryman to the Bloomington Police Department. Mr. Perryman was told at that time that he was being "detained" and not "arrested."

52.    Defendant Risdall was contacted and told that Mr. Perryman was in custody. However, Risdall stated that he was not coming in that day. Risdall then arrested Mr. Perryman; Doe Defendants 1–10 acted on Risdall's direction to effectuate the arrest.

53.    Mr. Perryman was then arrested for robbery.

54.    At no point did probable cause exist to arrest Mr. Perryman for the car theft or the violent robbery at the Mall of America.

55.    Mr. Perryman was confined over the weekend.

56.    Two days later, on Monday September 27, 2021, Defendant Risdall briefly spoke with Mr. Perryman and placed his cellphone into a chain of custody report. No probable cause determination was made at this time.

57.    In fact, no probable cause determination was made until Tuesday September 28, in violation of the 48-hour rule.

58.    Under the 48-hour rule, when a person arrested without a warrant is not released under Minn. R. Crim. P. 4 or 6, a judge must make a probable cause determination without unnecessary delay. (Minn. R. Crim. P. 4.03, subd. 1.) In any event, a probable cause determination must be made within 48 hours from the time of the arrest, including the day of arrest, Saturdays, Sundays, and legal holidays. (*Id.*)

59.    For Mr. Perryman, that meant that a probable cause determination needed to be made by 4:33PM on Monday September 27, 2021.

60.    Defendant Risdall and the City of Bloomington were aware of this rule and deadline, as the booking form specifically instructed that the 48-hour rule expired at 4:33PM on September 27.

61.    Despite that, no such determination was made by that time.

62.     Defendant Hennepin County did not bring a probable cause filing until Tuesday Sept. 28, 2021.

63.     On Tuesday September 28, 2021, Defendant Risdall sought a search warrant for Mr. Perryman's phone. In his search warrant application, Defendant Risdall stated that Perryman was identified by law enforcement but did not state that it was Defendant Risdall himself who had claimed to identify Mr. Perryman as the suspect.

64.     On that same day, Hennepin County prosecutor David Romaker filed charges against Mr. Perryman. In his charging document, Romaker stated that: "Hennepin County CISA analysts identified PERRYMAN, who had his mask pulled down. Police then viewed booking photos of PERRYMAN, compared them to the Walmart surveillance photo, and positively identified PERRYMAN as the male from the MOA robbery."

65.     It is unclear who informed Prosecutor Romaker that CISA analysts identified Perryman, as opposed to Defendant Risdall. It is also unclear which series of events is true.

66.     Both the Bloomington Police Department and Hennepin County simply proceeded with the arrest, confinement, and prosecution of Mr. Perryman based solely on the premise that the suspect and Mr. Perryman were both light skinned, young Black men, either by Risdall's identification, CISA's identification, or both.

67.     Neither Defendant City of Bloomington nor Defendant Hennepin County investigated the identity of the suspect any further than the identification from Risdall or CISA, the latter resulting apparently from facial recognition software.

68.     Neither Defendant City of Bloomington nor Defendant Hennepin County performed an in-person identification or a photographical lineup.

69.     Neither Defendant City of Bloomington nor Defendant Hennepin County contacted any of the victims to seek further identification.

70.     Neither Defendant City of Bloomington nor Defendant Hennepin County considered Mr. Perryman's alibis.

71.     Defendant City of Bloomington and Defendant Hennepin County instead—on the baseless photo identification alone—threw the weight of the criminal justice system at Mr. Perryman, an innocent teenager, charging him with felony aggravated robbery in the first degree.

72.     Felony aggravated robbery in the first degree carries a maximum sentence of twenty years in prison and/or $35,000, and a minimum sentence of three years.

**Perryman's defense against the improper charges**

73.     Faced with years in prison for a crime he did not commit, Mr. Perryman hired an attorney, Mark Kelly, to defend him against these criminal charges. Mr. Perryman had to pay Mr. Kelly a retainer to defend him against these charges for which he knew he was innocent.

74.     While the police investigation never moved beyond the cursory and inaccurate identification by the CISA DOE Defendant(s) and Defendant Risdall, Mr. Kelly began investigating the case and collecting evidence.

75.     Principally, Mr. Kelly determined that the photograph matching "identification" of Mr. Perryman was nonsense.

76.     Specifically, Mr. Kelly noted that the mismatched tattoos meant it was impossible that Mr. Perryman was the suspect shown in the Walmart surveillance footage.

77.     On October 7, 2021, Mr. Kelly contacted Defendant Risdall and pointed out that Mr. Perryman could not be the person in the photo because Perryman had forearm tattoos, but the suspect did not. Mr. Kelly sent Risdall photos of Mr. Perryman's tattoos.

78.     On the same day, Mr. Kelly also shared with Defendant Risdall a time-stamped photo of Mr. Perryman on the date of the robbery being miles away from the scene of the crime at a family birthday party.



*(Photo shared with the prosecutor of Mr. Perryman on date of the robbery at a family event.)*

79.     Defendant Risdall did not immediately share this information with the prosecutor.

80.     Defendant Risdall did eventually share this knowledge with Hennepin County but, even then, did not recommend that the charges be dropped.

81.     On October 15, 2021, Mr. Kelly reminded Defendant Risdall that Risdall had records in his possession that noted Mr. Perryman's forearm tattoos and sent additional photos. Again, Defendant Risdall did not request that Hennepin County drop the charges against Perryman.

82.     On October 18, 2021, Mr. Kelly gave Defendant Risdall Mr. Perryman's employment records that confirmed Perryman's location at the time of the carjacking for the car used in the MOA robbery.

83.     Again, Defendant Risdall did not request that Hennepin County drop the charges against Perryman.

84.     On October 27, 2021—over a month after Mr. Perryman's arrest—Defendant Risdall was given additional work records that showed Mr. Perryman was at work during the time the suspects committed the carjacking for the car used in the MOA robbery.

85.     Again, Defendant Risdall did not request that Hennepin County drop the charges against Kylese Perryman.

86.     On October 28, 2021, Defendant Risdall was given the same information again, from a different source.

87.     Again, Defendant Risdall did not request that Hennepin County drop the charges against Perryman.

88.     Hennepin County was also in possession of Mr. Perryman's phone records from Verizon which established that Mr. Perryman was at home or work at all times relevant to the carjacking and the MOA robbery.

89.     Again, Hennepin County did not drop the charges against Mr. Perryman.

90.     As time went on, and sensing that the matter had shifted, Defendant Risdall stopped taking credit for the identification of Mr. Perryman. In Risdall's supplemental report drafted on October 28, 2021, Defendant Risdall stated that: "Hennepin County CISA (Criminal Information Sharing and Analysis) identified one of the two suspects as Kylese Perryman based on prior law enforcement contacts to include a May 2021 booking photo."

91.     All through October 2021, both Defendant City of Bloomington and Defendant Hennepin County consistently received more and more evidence that Mr. Perryman did not commit the Mall of America robbery than they had when they issued the KOPS alert, sought search

warrants, and brought criminal charges against him. But now, both these Defendants moved with deliberate sloth.

92.   As of October 28, 2021, the Defendants had a plethora of evidence sufficient to show that Mr. Perryman was not the MOA robber, including but not limited to:

- Evidence that Mr. Perryman had tattoos which the suspect clearly did not;

- Evidence that Mr. Perryman and the suspect had different hair styles;

- Evidence that Mr. Perryman and the suspect were different weights;

- Evidence that Mr. Perryman and the suspect were different heights;

- Evidence (by photo and phone record) that Mr. Perryman was at a family birthday party at the time of the robbery; and

- Evidence (by timecard and phone record) that Mr. Perryman was at work at the time of the related carjacking.

93.   Despite this, the Defendants did not drop the charges against Mr. Perryman.

94.   It was not until November 16, 2021—52 days after Mr. Perryman's unlawful arrest—that Defendant Hennepin County dropped the charges against Mr. Perryman, finally releasing him from prosecution for a crime which he had no involvement.

**The confinement of Kylese Perryman**

95.   As a result of the faulty identification and improper arrest, Mr. Perryman suffered severely.

96.   Mr. Perryman spent five days in jail as a result of the faulty identification and arrest for a crime which he did not commit.

97. The unjustified confinement in and of itself is wrong, but additionally, Mr. Perryman could not help care for his young children and was forced to miss key life events as a result of his confinement, including a funeral for his friend and his grandmother's memorial.

98. The unjustified confinement also forced Mr. Perryman to take time away from his job.

99. Mr. Perryman also had to pay bail in order to be released, so that he could return to work and care for his young children.

100. Then, following his release, Mr. Perryman was still not free. He spent 30 days on mandatory house arrest until the charges against him were dropped. During this time, Mr. Perryman was required to wear an ankle monitor.

101. During Mr. Perryman's house arrest, he was limited in what he was able to do and where he was able to go.

102. Mr. Perryman even had to request permission to attend the birth of his son due to the house arrest.

103. Being forced to wear an ankle monitor was stigmatizing, embarrassing, and shameful for Mr. Perryman, especially because he did not commit the underlying crime at issue.

**Kylese Perryman's expungement**

104. Mr. Perryman sought an expungement of his criminal record, seeing as he did not commit the underlying crime for which he was charged.

105. Defendant Hennepin County did not oppose the expungement.

106. The expungement was granted on May 23, 2022, leaving this incident on Mr. Perryman's record for over eight months.

**The alleged use of facial recognition software to identify Kylese Perryman**

107.    The Defendants have put forth multiple, conflicting versions of the story about who performed the incorrect identification of Mr. Perryman and how.

108.    In a statement made to the media following the dropping of the charges, the Hennepin County Sheriff's Office stated that Bloomington Police Department initially asked DOE Defendants 11–20 to use facial recognition software on the Walmart surveillance images to identify any leads.

109.    According to the statement, the DOE Defendants determined that the image was not high resolution enough, and they were unable to use the software to identify a lead. DOE Defendants told this to the Bloomington Police Department on September 23, 2021.

110.    That same day, Hennepin County claims that one of the DOE Defendants was looking at booking photographs for an unrelated case and determined that the photo of Kylese Perryman was the suspect from the MOA robbery. They then sent Bloomington Police Department Mr. Perryman's name, date of birth, and booking photo.

111.    Hennepin County then told an entirely different story during the expungement process.

112.    During the expungement process, Defendant Hennepin County continued its course correction and informed the Court that the identification of Mr. Perryman was a result of facial recognition software error and not human error.

113.    Facial recognition software is notoriously bad at identifying certain groups, specifically Black men. (*See* Drew Harwell, *Federal Study Confirms Racial Bias of Many Facial-Recognition Systems, Casts Doubt on Their Expanding Use*, WASH. POST (Dec. 19, 2019, 6:43

P.M.),    https://www.washingtonpost.com/technology/2019/12/19/federal-study-confirms-racial-bias-many-facial-recognition-systems-casts-doubt-their-expanding-use/).

114.    Black men are up to 100 times more likely to be misidentified by facial recognition software than white men. (*Id.*)

115.    CISA allegedly used facial recognition software, despite its known unreliability.

116.    This is directly contrary to the Hennepin County Sheriff's Office Policy Manual, regarding CISA, specifically Section 800.7 which states that information collected by CISA employees should be "reliable."

117.    Further, the Training Manual for Hennepin County's facial recognition program states that: "HCSO policy is to only use this technology for investigative purposes. It is **NOT** a method to positively identify an individual." (Emphasis in original).

118.    Defendant Hennepin County even notes that facial recognition "is still a hit-or-miss technology."

119.    However, that is exactly how the Defendants used the information: as a method to positively identify an individual, here, Mr. Perryman

120.    The Training Manual states further that the facial recognition technology is "not absolute," and that officers and analysts should keep in mind other suspect demographics like height, weight, age, and more in assessing whether the facial recognition was accurate.

121.    The manual makes clear that facial recognition may be incorrect and that officers and analysts should check facial features (like nose, eyebrows, mouth, chin, lips, cheeks, eye shape and placement, etc.) in order to verify a match.

122.    It warns: "Be patient. This technology is not absolute nor reliable."

123.    Relying solely on a hit from facial recognition software cannot provide reasonable probable cause for an arrest. This is especially for people of color—like Mr. Perryman—as the scientific literature shows that facial recognition technology routinely fails to properly identify these groups at the accuracy rates it achieves with white men. Indeed, several large cities in the country have severely restricted or outright prohibited use of this unreliable technology due to the likelihood that innocent people will be harassed, detained, and unlawfully charged with crimes—particularly racial minorities.

124.    It is not clear who truly misidentified Mr. Perryman as the suspect from the Mall of America robbery: Defendant Risdall or the DOE Defendants 11–20 operating the facial recognition software. The Defendants have been deliberately vague on this point.

125.    Defendants had a duty to be aware of the limitations of the technology and to not solely rely on it as the basis of an arrest of an innocent young Black man, especially in the wake of other, obvious and available information, like the suspect's lack of forearm tattoos and completely different build and hairstyle. More investigation was needed prior to any arrest.

126.    Defendants' arrest, confinement, and subsequent prosecution of Mr. Perryman violated his rights under the Federal constitution, the Minnesota state constitution, and Minnesota state law and resulted in monetary damages, including, but not limited to money for bail and the fees and costs associated with his criminal defense.

## COUNT I
### 42 U.S.C. § 1983 Fourth Amendment Illegal Search and Seizure – False Arrest
### *Against all Defendants*

127.    All previous paragraphs are incorporated herein by reference as though fully set forth.

128.     This is a claim under 42 U.S.C. § 1983 for violation of the Fourth Amendment of the U.S. Constitution.

129.     Defendants City of Bloomington, Hennepin County, Andrew Risdall, and the DOE Defendants caused Kylese Perryman to be arrested.

130.     Specifically, Defendant Risdall named Kylese Perryman as a suspect based on insufficient information and despite having access to plainly exculpatory evidence, and he issued a KOPS alert.

131.     In the alternative, DOE Defendants 11–20 identified Kylese Perryman as a suspect based solely on a hit from facial recognition software known to have low accuracy rates for people of color.

132.     Defendant City of Bloomington ordered the state trooper to unlawfully detain Kylese Perryman and bring him to the Bloomington Police Department.

133.     Defendant Risdall ordered Defendant City of Bloomington to arrest Kylese Perryman for the Mall of America and car theft crimes.

134.     DOE Defendants 1–10 arrested Kylese Perryman.

135.     Defendant City of Bloomington and DOES 1–10 arrested Kylese Perryman as a result of the KOPS alert and Risdall's orders. Defendant City of Bloomington instigated the arrest at Risdall's direction, despite having no probable cause.

136.     Defendant Hennepin County filed charges against Kylese Perryman as a result of Risdall's arrest order and Defendant City of Bloomington's performance of the same. Defendant Hennepin County filed these charges as instigated by Risdall's initial direction.

137.     At no point did any Defendant have probable cause to arrest Kylese Perryman for the Mall of America robbery or related car theft.

138.    At no point did any Defendant have a warrant to arrest Kylese Perryman for the Mall of America robbery or related car theft.

139.    The Defendants arrested Kylese Perryman with no lawful authority to do so.

140.    The Defendants had actual knowledge that would lead them to conclude that Kylese Perryman could not have committed the crimes for which they arrested him.

141.    In the alternative, the Defendants acted in reckless disregard for the truth of who committed the crime, as they possessed information which would lead them to conclude that it could not have been Mr. Perryman.

142.    Defendants failed to exercise reasonable care when they identified Mr. Perryman as the suspect based on a comparison of the Mall of America robbers and Mr. Perryman's booking sheet. The booking sheet confirmed, by itself, that Mr. Perryman did not match the description of either suspect.

143.    The Defendants' conduct was either motivated by evil intent or done with reckless or callous indifference to the federally protected rights of Kylese Perryman, entitling him to an award of punitive damages against Defendant Risdall.

144.    Wherefore, as a direct and proximate cause of the actions of Defendants, Plaintiff has suffered damages in an amount in excess of $250,000.00 exclusive of costs and interest, plus attorneys' fees as authorized by law.

## COUNT II
**42 U.S.C. § 1983 Fourth Amendment Illegal Search and Seizure – False Imprisonment**
*Against Defendants City of Bloomington, DOES 1–10, and Defendant Andrew Risdall*

145.    All previous paragraphs are incorporated herein by reference as though fully set forth.

146.    Defendants Andrew Risdall, DOES 1–10, and the City of Bloomington intended to, and actually did, confine Kylese Perryman by way of his arrest on September 25, 2021.

147.    Defendants did not have probable cause to detain Kylese Perryman.

148.    In fact, Defendants had plainly exculpatory evidence proving that Kylese Perryman could not have committed the crime for which he was arrested.

149.    The Defendants had actual knowledge that would lead them to conclude that Kylese Perryman could not have committed the crimes for which they imprisoned him.

150.    In the alternative, the Defendants acted in reckless disregard for the truth of who committed the crime, as they possessed information which would lead them to conclude that it could not have been Mr. Perryman.

151.    Kylese Perryman was held in confinement for five days prior to his eventual release.

152.    Kylese Perryman was held in confinement without a probable cause determination for over 48 hours.

153.    Kylese Perryman was aware that he was being confined, despite his innocence.

154.    Defendants Risdall, DOES 1–10, and City of Bloomington were aware that there was not sufficient evidence to arrest and imprison Kylese Perryman. Specifically, they knew that they lacked an arrest warrant and/or probable cause and that evidence in their possession showed that Mr. Perryman could not have been one of the Mall of America robbers. Despite this knowledge, they unreasonably ignored the contradictory information they had and imprisoned Mr. Perryman in violation of his constitutional rights.

155.    To be sure, when Kylese Perryman sought eventual expungement of the charges, not only was the expungement granted, but Hennepin County never opposed the expungement.

156.    The Defendants' conduct was either motivated by evil intent or done with reckless or callous indifference to the federally protected rights of Kylese Perryman, entitling him to an award of punitive damages against Defendant Risdall.

157.    Wherefore, as a direct and proximate cause of the actions of Defendants, Plaintiff has suffered damages in an amount in excess of $250,000.00 exclusive of costs and interest, plus attorneys' fees as authorized by law.

## COUNT III
### 42 U.S.C. § 1983 Monell Claim – Failure to Train and Supervise
*Against City of Bloomington, DOES 1–10, Hennepin County, and DOES 11–20*

158.    All previous paragraphs are incorporated herein by reference as though fully set forth.

159.    Defendants City of Bloomington and Hennepin County had a duty to properly train, supervise, and discipline Defendant Risdall and CISA staff.

160.    They breached that duty, by, *inter alia*, improperly training, authorizing, encouraging or directing officers on identification of suspects, reasonable standards for arrests, use of KOPS alerts, CISA policies, and failing to follow rule Minn. R. Crim. P. 4.03.

161.    The improper actions as described in the preceding paragraph constitute an unconstitutional policy, practice, or custom, caused by lack of supervision, failure to train, or other act or omission, and was the moving force behind these alleged state law violations.

162.    The policy, pattern of practice, or custom of unconstitutional conduct is tacitly or overtly sanctioned, as evidenced by the conduct of Defendant Risdall and unknown CISA staff, and the failure of the City of Bloomington and Hennepin County to train, supervise, investigate, and discipline its employees.

163.    Moreover, to the extent DOES 1–10 act to arrest individuals without probable cause, they are inadequately trained and/or supervised.

164.    Moreover, to the extent that CISA relies on facial recognition software to improperly identify suspects, this is an unreasonable and unconstitutional custom or practice, leading to constitutional rights violations, especially as this software has been scientifically proven to be inaccurate, especially as it relates to racial minorities, the elderly, and women. It is also not a reliable form of information collection, as required by the Hennepin County Sheriff's Office Policy Manual. Further, the CISA training documents provide that facial recognition should not be used to positively identify individuals and all facial recognition should be confirmed by review; the DOE Defendants 11–20 are being improperly trained to the extent they do not follow this direction and/or were not told about these issues.

165.    Defendants breached their own policy by relying on facial recognition software to positively identify Kylese Perryman and ignoring all the known differences between him and the true suspect. Such reliance is either despite actual knowledge of Perryman's innocence or is in reckless disregard of information about Perryman's innocence.

166.    The unconstitutional behavior of Defendant Risdall and CISA staff/DOE Defendants in this matter has been carried out pursuant to a policy, pattern of practice, or custom, whether formal or informal, which violates the constitutional rights of persons such as Kylese Perryman.

167.    The failure to end this policy, pattern of practice, or custom was a proximate cause of the damages suffered by Kylese Perryman.

168.     Wherefore, as a direct and proximate cause of the actions of Defendants, Plaintiff has suffered damages in an amount in excess of $250,000.00 exclusive of costs and interest, plus attorneys' fees as authorized by law.

## COUNT IV
### 42 U.S.C. § 1983 Civil Conspiracy Claim
### *Against all Defendants*

169.     All previous paragraphs are incorporated herein by reference as though fully set forth.

170.     The Defendants conspired to deprive Kylese Perryman of his constitutional rights.

171.     Specifically, the Defendants all knowingly agreed and assented to the arrest and confinement of Kylese Perryman, even though each Defendant was in possession of information which showed that Mr. Perryman could not have been one of the Mall of America robbers. Despite this knowledge, the Defendants agreed anyway to arrest, detain, and prosecute Mr. Perryman for a crime he did not—and could not—commit.

172.     Each Defendant took an overt act in furtherance of this conspiracy.

173.     Defendant Risdall incorrectly identified Mr. Perryman as a suspect based on his booking photo and despite being in possession of evidence confirming that the suspect was not Mr. Perryman, issued a KOPS alert relating to Mr. Perryman, and ordered the Defendant City of Bloomington to arrest Mr. Perryman.

174.     The DOE Defendants 11–20 utilized facial recognition software to misidentify Kylese Perryman as a suspect, despite its inaccuracy. Defendant Hennepin County is responsible for the actions of the DOE Defendants 11–20.

175.     Defendant City of Bloomington arrested and detained Mr. Perryman. In part, the City of Bloomington was acquiescing to the direction of Defendant Risdall.

176.    The DOE Defendants 1–10 arrested Mr. Perryman knowing they lacked probable cause to do so, acquiescing to the direction of Defendant Risdall.

177.    Hennepin County charged and prosecuted Mr. Perryman. In part, Hennepin County was acquiescing to the direction of Risdall.

178.    Moreover, the Defendants each took an overt act in furtherance of the conspiracy to the extent they agreed to change the narrative over time as to who was responsible for the incorrect identification of Kylese Perryman and the ignoring of plainly exculpatory evidence.

179.    Each of these acts, individually and together, injured Kylese Perryman and deprived him of his constitutional rights, specifically, under the Fourth Amendment.

180.    The Defendants' conduct was either motivated by evil intent or done with reckless or callous indifference to the federally protected rights of Kylese Perryman, entitling him to an award of punitive damages against Defendant Risdall.

181.    Wherefore, as a direct and proximate cause of the actions of Defendants, Plaintiff has suffered damages in an amount in excess of $250,000.00 exclusive of costs and interest, plus attorneys' fees as authorized by law, as well as all other relief that this Court deems just and equitable.

## COUNT V
### 42 U.S.C. § 1983 – Fourth Amendment Violation of the Particularity Clause
### *Against Defendant Risdall*

182.    All previous paragraphs are incorporated herein by reference as though fully set forth.

183.    The Fourth Amendment provides that, "no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched and the person or things to be seized."

184.    The adoption of the Fourth Amendment's particularity protection was done because the founders feared the use of a "general warrant" in England in use at the time of the revolution. *Sprigg v. Stump*, 7 F. 207 (C.C.D. OR. 1881). Instead, if the government sought to arrest someone, they had to come forth with an oath or affirmation as to why that person should be imprisoned.

185.    Defendant Risdall acted under color of state law. His use of a KOPS Alert was an attempt to do an end run around the Fourth Amendment's particularity requirement.

186.    Defendant Risdall's acts and omissions in the course of his investigation showed a reckless disregard for the truth and knowledge that he would not have been able to get a warrant for Mr. Perryman's arrest.

187.    Defendant Risdall had actual knowledge that Mr. Perryman did not commit any crime. Yet, either due to laziness, carelessness, or other reasons violated his Fourth Amendment rights.

188.    Further, Defendant Risdall knew that his statements to the prosecutor helped establish the probable cause of the complaint against Mr. Perryman, and the ongoing criminal prosecution. Yet, upon information and belief, Defendant Risdall withheld exculpatory information from the prosecutors and failed to timely notify them of relevant facts.

189.    Defendant Risdall's actions support a finding of recklessness. Any law enforcement officer acting in good faith would know that misidentification as described above is a serious intrusion on the personal liberty of an individual and that a KOPS Alert is insufficient to meet the Fourth Amendment standards.

190.    The Defendant's conduct was either motivated by evil intent or done with reckless or callous indifference to the federally protected rights of Kylese Perryman, entitling him to an award of punitive damages against Defendant Risdall.

191.     Wherefore, as a direct and proximate cause of the actions of Defendants, Plaintiff has suffered damages in an amount in excess of $250,000.00 exclusive of costs and interest, plus attorneys' fees as authorized by law, as well as all other relief that this Court deems just and equitable.

**COUNT VI**
**State Law Tort Claim - False Arrest**
*Against All Defendants*

192.     All previous paragraphs are incorporated herein by reference as though fully set forth.

193.     Defendants City of Bloomington, Hennepin County, Andrew Risdall, and the DOE Defendants unlawfully caused Kylese Perryman to be arrested.

194.     Specifically, Defendant Risdall named Kylese Perryman as a suspect based on insufficient information and despite having access to plainly exculpatory evidence, and he issued a KOPS alert.

195.     In the alternative, DOE Defendants 11–20 identified Kylese Perryman as a suspect based solely on a hit from facial recognition software known to have low accuracy rates for people of color.

196.     Defendant City of Bloomington ordered the state trooper to unlawfully detain Kylese Perryman and bring him to the Bloomington Police Department.

197.     Defendant Risdall ordered Defendant City of Bloomington to arrest Kylese Perryman for the Mall of America and car theft crimes.

198.     DOE Defendants 1–10 arrested Kylese Perryman.

199.    Defendant City of Bloomington and DOES 1–10 arrested Kylese Perryman as a result of the KOPS alert and Risdall's orders. Defendant City of Bloomington instigated the arrest at Risdall's direction, despite having no probable cause.

200.    Defendant Hennepin County filed charges against Kylese Perryman as a result of Risdall's arrest order and Defendant City of Bloomington's performance of the same. Defendant Hennepin County filed these charges as instigated by Risdall's initial direction.

201.    At no point did any Defendant have probable cause to arrest Kylese Perryman for the Mall of America robbery or related car theft.

202.    At no point did any Defendant have a warrant to arrest Kylese Perryman for the Mall of America robbery or related car theft.

203.    The Defendants arrested Kylese Perryman with no lawful authority to do so.

204.    The Defendants had actual knowledge that would lead them to conclude that Kylese Perryman could not have committed the crimes for which they arrested him.

205.    In the alternative, the Defendants acted in reckless disregard for the truth of who committed the crime, as they possessed information which would lead them to conclude that it could not have been Mr. Perryman.

206.    Defendants failed to exercise reasonable care when they identified Mr. Perryman as the suspect based on a comparison of the Mall of America robbers and Mr. Perryman's booking sheet. The booking sheet confirmed, by itself, that Mr. Perryman did not match the description of either suspect.

207.    Wherefore, as a direct and proximate cause of the actions of Defendants, Plaintiff has suffered damages in an amount in excess of $250,000.00 exclusive of costs and interest, plus attorneys' fees as authorized by law.

## COUNT VII
### State Law Tort Claim - False Imprisonment
### *Against Defendants City of Bloomington, DOES 1–10, and Defendant Andrew Risdall*

208.    All previous paragraphs are incorporated herein by reference as though fully set forth.

209.    Defendants Andrew Risdall, DOES 1–10, and the City of Bloomington unlawfully intended to, and actually did, confine Kylese Perryman by way of his arrest on September 25, 2021.

210.    Defendants did not have probable cause to detain Kylese Perryman.

211.    In fact, Defendants had plainly exculpatory evidence proving that Kylese Perryman could not have committed the crime for which he was arrested.

212.    The Defendants had actual knowledge that would lead them to conclude that Kylese Perryman could not have committed the crimes for which they imprisoned him.

213.    In the alternative, the Defendants acted in reckless disregard for the truth of who committed the crime, as they possessed information which would lead them to conclude that it could not have been Mr. Perryman.

214.    Kylese Perryman was held in confinement for five days prior to his eventual release.

215.    Kylese Perryman was held in confinement without a probable cause determination for over 48 hours.

216.    Kylese Perryman was aware that he was being confined, despite his innocence.

217.    Defendants Risdall, DOES 1–10, and City of Bloomington were aware that there was not sufficient evidence to arrest and imprison Kylese Perryman. Specifically, both knew that they lacked an arrest warrant and/or probable cause and that evidence in their possession showed

that Mr. Perryman could not have been one of the Mall of America robbers. Despite this knowledge, they unreasonably ignored the contradictory information they had and imprisoned Mr. Perryman in violation of his constitutional rights.

218.   To be sure, when Kylese Perryman sought eventual expungement of the charges, not only was the expungement granted, but Hennepin County never opposed the expungement.

219.   Wherefore, as a direct and proximate cause of the actions of Defendants, Plaintiff has suffered damages in an amount in excess of $250,000.00 exclusive of costs and interest, plus attorneys' fees as authorized by law.

## COUNT VIII
### Violation of MN Constitution, Article I, § 10 – Unreasonable Search and Seizure Prohibited
### *Against All Defendants*

220.   All previous paragraphs are incorporated herein by reference as though fully set forth.

221.   The Defendants subjected Plaintiff to an unlawful arrest and unlawful imprisonment as fully set forth above.

222.   The Defendants arrested Kylese Perryman with no lawful authority to do so.

223.   The Defendants continued imprisoning and detaining Kylese Perryman with his knowledge without probable cause or a warrant to do so.

224.   The Defendants continued imprisoning and detaining Kylese Perryman even after 48 hours had passed since his initial arrest, and he was entitled to a finding of probable cause or to be let free.

225.   The arrest and detention of Kylese Perryman was done without lawful authority. Such acts and omissions violate Article 1, § 10 of the Minnesota Constitution.

226.    As a proximate result of Defendants' unconstitutional policies, practices, customs, lack of supervision, failure to train, acts, and omissions, done under color of law and official authority, Plaintiff suffered significant deprivations of his constitutional rights detailed in the preceding causes of action, namely his Article 1 § 10 Minnesota constitutional right to be free from unreasonable seizures. These actions were done with such deliberate indifference on the part of Defendants that these constitutional violations inevitably would occur. Defendants' policies, practices, customs, lack of supervision, failure to train, acts, and omissions were the moving force behind these constitutional violations and the cause of such violations.

227.    Wherefore, as a direct and proximate cause of the actions of Defendants, Plaintiff seeks injunctive relief prospectively enjoining Defendants from wrongfully detaining and imprisoning him and other persons without a warrant or probable caused based only on findings from facial recognition software and/or KOPS alerts.

## COUNT IX
### Punitive Damages
#### *Against Defendant Risdall*

228.    All previous paragraphs are incorporated herein by reference as though fully set forth.

229.    The actions of Defendant Risdall described above, including specifically Defendant Risdall's identification of Kylese Perryman, decision to arrest Kylese Perryman, refusal to release Kylese Perryman despite being in possession of information which showed he should have promptly been released, and falsely imprisoning him all constitute a malicious, willful, or reckless disregard for his Fourth Amendment rights under the US Constitution for which Defendant Risdall is individually liable. Punitive damages are sought only with respect to Plaintiff's federal claims under 42 U.S.C. § 1983 against Defendant Risdall and not any state law claims.

## DEMAND FOR JURY TRIAL

Plaintiff demands a trial by jury of all claims so triable.

## REQUEST FOR RELIEF

**WHEREFORE,** Plaintiff respectfully requests that the Court:

1. Enter judgment in Plaintiff's favor on his claims against Defendants in an amount exceeding $250,000, including litigation expenses and attorneys' fees, the exact amount to be proven at trial;

2. Declare that Defendants' conduct, as set forth above, violated 42 U.S.C. § 1983;

3. Award Plaintiff damages to compensate him for the harm he suffered as a result of Defendants' unlawful conduct;

4. Award Plaintiff punitive damages against Defendant Risdall with respect to Plaintiff's claims under federal law, the exact amount to be proven at trial;

5. Grant Plaintiff leave to amend this Complaint to include a claim for punitive damages with respect to his state law claims, the exact amount to be proven at trial;

6. Award Plaintiff injunctive relief in order to ensure that Plaintiff specifically is not a repeat victim of misidentification by the Defendants;

7. Award Plaintiff injunctive relief in the form of cessation of the Defendants' use of facial recognition software for criminal suspect identification;

8. Award Plaintiff injunctive relief in the form of cessation of the Defendants' use of KOPS alerts for warrant or probable cause purposes;

9. Award Plaintiff reasonable expenses incurred in this litigation, including attorney and expert fees, pursuant to 42 U.S.C. § 1988;

10. Grant Plaintiff all statutory relief to which he is entitled;

11.     Grant Plaintiff leave to amend this Complaint to supplement any factual deficiencies or otherwise address any pleading deficiencies herein; and

12.     Grant any other relief the Court deems just and equitable.

Respectfully submitted,

Dated: June 28, 2023

**NELSON MULLINS RILEY & SCARBOROUGH, LLP**

By: */s/ Molly J. Given*
Molly Jean Given (MN #0387713)
Ike W. Messmore (MN #0393276)
Claire C. Barlow (MN #0402721)
1600 Utica Avenue South, Suite 750
Minneapolis, MN 55416
Tel: (612) 464-4500
Fax: (612) 255-0739
mollyjean.given@nelsonmullins.com
ike.messmore@nelsonmullins.com
claire.barlow@nelsonmullins.com

Ian Bratlie (MN #0319454)
Teresa Nelson (MN #0269736)
**AMERICAN CIVIL LIBERTIES UNION OF MINNESOTA**
PO Box 14720
Minneapolis, MN 55414
Tel: (651) 645-4097
ibratlie@aclu-mn.org
tnelson@aclu-mn.org

*Attorneys for Plaintiff Kylese Perryman*