# UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

| | |
|---|---|
| Kylese Perryman, | **Civ. Case No 23-1984 (DWF/DTS)** |
|        Plaintiff, | |
| v. | |
| City of Bloomington; Does 1–10, individuals that are employees or agents of the Bloomington Police Department; Detective Andrew Risdall; Hennepin County; and Does 11–20, individuals that are employees or agents of Hennepin County, | **PLAINTIFF'S OPPOSITION TO HENNEPIN COUNTY'S MOTION TO DISMISS** |
|        Defendants. | |

## <u>TABLE OF CONTENTS</u>

<u>Page</u>

Introduction ................................................................................................... 1

Factual Background.......................................................................................... 2

Legal Standard ................................................................................................. 5

Argument .......................................................................................................... 6

I.     Hennepin County is liable under Section 1983 as its failure to adequately
       train its employees led to Mr. Perryman's improper identification, arrest,
       and prosecution.......................................................................................... 8

       A.     Plaintiff's claims regarding Hennepin County's policies and customs
              are properly pleaded ...................................................................... 8

       B.     Plaintiff properly pleaded that Hennepin County failed to train its
              employees with respect to suspect identifications...................... 11

II.    Hennepin County is not entitled to immunity ......................................... 15

       A.     Hennepin County is not entitled to official immunity because it
              negligently performed its ministerial duties.................................. 17

       B.     Even if Hennepin County's behavior was discretionary, it would still
              not be subject to immunity because it was unreasonable, willful, and
              malicious ....................................................................................... 20

       C.     Hennepin County is not entitled to vicarious official immunity ................ 23

III.   Plaintiff's claims under state law are properly pleaded and actionable ................ 26

       A.     Hennepin County is liable for false arrest as it instigated Mr.
              Perryman's arrest........................................................................... 26

       B.     Plaintiff may bring injunctive claims under the Minnesota
              Constitution .................................................................................. 28

IV.    In the alternative, Plaintiff should be granted leave to amend ............................... 29

Conclusion ....................................................................................................... 30

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Adewale v. Whalen*,
  21 F. Supp. 2d 1006 (D. Minn. 1998)......................................................................26

*Anderson v. Anoka Hennepin Indep. Sch. Dist. 11*,
  678 N.W.2d 651 (Minn. 2004).......................................................................18, 24

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009)............................................................................................6

*Ashley County, Ark. v. Pfizer, Inc.*,
  552 F.3d 659 (8th Cir. 2009) ................................................................................5

*Braden v. Wal-Mart Stores, Inc.*,
  588 F.3d 585 (8th Cir. 2009) ...........................................................................6, 13

*City of Canton, Ohio v. Harris*,
  489 U.S. 378 (1989)..........................................................................10, 11, 12, 14

*Clemmons v. Armontrout*,
  477 F.3d 962 (8th Cir. 2007) ..............................................................................16

*Connick v. Thompson*,
  563 U.S. 51 (2011).............................................................................................12

*Cook v. Trovatten*,
  274 N.W. 165 (Minn. 1937)................................................................................18

*Doe ex rel. Doe v. Sch. Dist. of City of Norfolk*,
  340 F.3d 605 (8th Cir. 2003) ............................................................................9, 10

*Doe v. Gomez*
  542 N.W.2d 17 (Minn. 1995)............................................................................9, 29

*Doe v. Park Ctr. High Sch.*,
  592 N.W.2d 131 (Minn. Ct. App. 1999)................................................................15

*Dokman v. Cnty. of Hennepin*,
  637 N.W.2d 286 (Minn. Ct. App. 2001)................................................................22

*Elwood v. Rice Cnty.*,
  423 N.W.2d 671 (Minn. 1988).........................................................................16, 17

*Foman v. Davis*,
    371 U.S. 178 (1962)......................................................................................30

*Gaines v. City of Minneapolis*,
    No. CV 18-838, 2019 WL 7283992 (D. Minn. Dec. 27, 2019)...............................16

*Gleason v. Metro. Council Transit Operations*,
    563 N.W.2d 309 (Minn. Ct. App. 1997).............................................................21

*Goyette v. City of Minneapolis*,
    No. 20-CV-1302, 2021 WL 3222495 (D. Minn. July 29, 2021) ...........................7

*Groenewold v. Kelley*,
    888 F.3d 365 (8th Cir. 2018) .........................................................................16

*Harlow v. Fitzgerald*,
    457 U.S. 800 (1982).......................................................................................15

*Johnson v. City of Minneapolis*,
    901 F.3d 963 (8th Cir. 2018) .........................................................................15

*Johnson v. City of Shelby, Miss.*,
    574 U.S. 10 (2014).........................................................................................6

*Kari v. City of Maplewood*,
    582 N.W.2d 921 (Minn. 1998)...................................................................18, 19

*Kariniemi v. City of Rockford*,
    882 N.W.2d 593 (Minn. 2016).....................................................................17, 18

*Kelly v. City of Minneapolis*,
    598 N.W.2d 657 (Minn. 1999)....................................................................16, 18

*Lundeen v. Renteria*,
    224 N.W.2d 132 (Minn. 1974)........................................................................27

*Mayard v. Siegfried*,
    No. 08-5853, 2011 WL 579334 (D. Minn. Feb. 8, 2011).....................................22

*McGaughtry v. City of Red Wing*
    808 N.W.2d 331 (Minn. 2011).......................................................................29

*Meier v. City of Columbia Heights*,
    686 N.W.2d 858 (Minn. Ct. App. 2004).......................................................24, 25

*Mellgren v. City of Minneapolis*,
    No. C3-98-1405, 1999 WL 10239 (Minn. Ct. App. Jan. 12, 1999)...................21, 22

*Miskovich v. Indep. Sch. Dist. 318,*
    226 F. Supp. 2d 990 (D. Minn. 2002) .................................................................21

*Monell v. Dep't of Soc. Servs.,*
    436 U.S. 658 (1978) .......................................................................... *passim*

*Nusbaum v. County of Blue Earth,*
    422 N.W.2d 713 (Minn.1988) ........................................................................15

*Ossman v. DianaCorp.,*
    825 F. Supp. 870 (D. Minn. 1993) ....................................................................5

*Parrish v. Ball,*
    594 F.3d 993 (8th Cir. 2010) .........................................................................12

*Pembaur v. City of Cincinnati,*
    475 U.S. 469 (1986) ....................................................................................11

*Peterson v. City of Minneapolis,*
    No. A22-0518, 2022 WL 17574754 (Minn. Ct. App. Dec. 12, 2022) ..............................22, 23

*Pletan v. Gaines,*
    494 N.W.2d 38 (Minn. 1992) ..........................................................................24

*R.S. v. Minnewaska Area Sch. Dist.,*
    894 F. Supp. 2d 1128 (D. Minn. 2012) .............................................................29

*Rehn v. Fischley,*
    557 N.W.2d 328 (Minn. 1997) ........................................................................21

*Rico v. State,*
    472 N.W.2d 100 (Minn. 1991) ........................................................................22

*Robertson v. Breakthrough Towing, LLC,*
    No. 19-10266, 2022 WL 4292314 (E.D. Mich. Sept. 16, 2022) .................................7

*S.M. v. Lincoln Cnty.,*
    874 F.3d 581 (8th Cir. 2017) .........................................................................12

*S.W. v. Spring Lake Park Sch. Dist. No. 16,*
    592 N.W.2d 870 (Minn. Ct. App. 1999) ............................................................25

*Shqeirat v. U.S. Airways Grp. Inc.,*
    645 F. Supp. 2d 765 (D. Minn. 2009) ..........................................................25, 27

*State by Beaulieu v. City of Mounds View,*
    518 N.W.2d 567 (Minn. 1994) ....................................................................21, 22

*T.B. by & through Bursch v. Indep. Sch. Dist. 112*,
  620 F. Supp. 3d 818 (D. Minn. 2022) ..................................................................12

*Tirado v. City of Minneapolis*,
  521 F. Supp. 3d 833 (D. Minn. 2021) ...........................................................7, 9, 10

*Vassallo ex rel. Brown v. Majeski*,
  842 N.W.2d 456 (Minn. 2014) ..........................................................................17

*Ward v. Nat'l Car Rental Sys.*,
  290 N.W.2d 441 (Minn. 1980) ..........................................................................27

*Ward v. Olson*,
  939 F.Supp.2d 956 (D. Minn. 2013) ..................................................................16

*Waste Recovery Co-op. of Minn. v. Cnty. of Hennepin*,
  517 N.W.2d 329 (Minn.1994) ...........................................................................17

*Watson ex rel. Hanson v. Metro. Transit Comm'n*,
  553 N.W.2d 406 (Minn. 1996) ..........................................................................21

*Wiederholt v. City of Minneapolis*,
  581 N.W.2d 312 (Minn. 1998) ....................................................................17, 24

## Rules

Fed. R. Civ. P. 7(b) ............................................................................................29

Fed. R. Civ. P. 8(a)(2) .........................................................................................9

Fed. R. Civ. P. 12 ................................................................................................9

Fed. R. Civ. P. 12(b)(6) ........................................................................................5

Fed. R. Civ. P. 15(a) ..........................................................................................29

Fed. R. Civ. P. 15(a)(2) .......................................................................................30

## Statutes

Minn. Stat. § 466.01, subd. 1 ...............................................................................15

Minn. Stat. § 466.02 ...........................................................................................15

## Other Authorities

Minn. Const. Art. 1 § 10 .....................................................................................22

U.S. Const. Art. IV .............................................................................................22

## Introduction

After misidentifying, arresting, and prosecuting an innocent young Black man, Hennepin County now seeks to avoid all liability for the injustices it caused. This Court should not permit it to do so.

Though the wrongful identification and prosecution of an innocent individual may sound like something from a bygone era, to observers of Twin Cities' police practice of disproportionately arresting people of color, Plaintiff's complaint sets forth a depressingly familiar set of facts. Plaintiff Kylese Perryman was simply driving in the Twin Cities when his life was turned upside down. What started as a simple traffic stop devolved into an arrest and felony charge for crimes with which Mr. Perryman had no knowledge of or involvement. Weeks prior, Defendants—Bloomington Detective Andrew Risdall and Hennepin County—had incorrectly identified Mr. Perryman as a violent robbery suspect based on facial recognition performed by Hennepin County. The identification was laughably wrong, with the only similar characteristic of the suspect and Mr. Perryman being the color of their skin. But despite ample exculpatory evidence in Hennepin County's very possession that Mr. Perryman could not be the suspect, Defendants identified him, issued a KOPS ("Keeping Our Police Safe") Alert informing officers statewide that he was armed and dangerous, arrested him, confined him in jail and then by house arrest, and then forced him to prove his innocence. Mr. Perryman—having no involvement in the crimes for which he was charged—was able to prove his innocence, but only after a months-long battle with Hennepin County, including sending cell phone records, timecards from work, and time-stamped photos of him being nowhere near the scene of the crimes. Following

Mr. Perryman's release, Hennepin County began telling conflicting tales of how the false identification occurred, blaming facial recognition software in some instances and human analysts in others. Hennepin County changes its story to whichever is more convenient for it at the time, leaving it unclear as to how this misidentification truly occurred.

Hennepin County now seeks dismissal from this action despite the undisputed fact that it wrongfully arrested and prosecuted Mr. Perryman for crimes it knew or should have known he did not commit. Hennepin County allowed for the wrongful identification, arrest, and prosecution of an innocent Black man to proceed, despite having been in possession of exculpatory evidence and information about Mr. Perryman the entire time. Hennepin County must be held liable for its actions, and this Court should deny its Motion to Dismiss.

## Factual Background

This case is about the wrongful misidentification, arrest, and prosecution of an innocent man, Kylese Perryman. On September 3 and 4, 2021, a series of carjackings and robberies took place. (Complaint, Doc. 1 at ¶¶ 17–20.) The robbers were captured on surveillance video using a stolen debit card at a Brooklyn Center Walmart, giving law enforcement access to images of the robbers. (*Id.*) At the times of these offenses, Kylese Perryman was either at work, at home, or at a family gathering; he was never anywhere near the scenes of the crimes. (*Id.* at ¶¶ 21–23.)

Despite having multiple alibis and no involvement in any of the underlying crimes, Mr. Perryman was wrongly identified by the Defendants as one of the suspects. (*See generally*, Doc. 1.) The stories that Defendants told about the identification process are muddled and conflicting. In the initial incident report, Defendant Risdall stated that he

2

"viewed booking photos of Perryman, compared them to the Walmart surveillance photo, and positively identified Mr. Perryman" as one of the suspects. (*Id.* at ¶ 25.) However, Hennepin County made a statement claiming that the Bloomington Police Department initially asked Hennepin County's Criminal Information and Sharing Analysis ("CISA") unit to use facial recognition software to identify a lead. (*Id.* at ¶ 108.) Hennepin County stated that its CISA analysts used the software, but the images were not high resolution enough to identify a lead. (*Id.* at ¶ 109.) But Hennepin County claims that after attempting to use the facial recognition software to no avail, one of its analysts was looking at photos for an unrelated case and somehow determined that Mr. Perryman was one of the suspects from the robbery in question here. (*Id.* at ¶ 110.) Hennepin County then told the Bloomington Defendants that Perryman was one of the robbers, passing along his name, date of birth, and previous booking photo. (*Id.*) Later, Hennepin County changed its story once more and told the court during Perryman's expungement proceedings that the identification of Mr. Perryman was the result of facial recognition software error and not human error. (*Id.* at ¶ 112.) The stories Hennepin County tells about this misidentification constantly change, and it is not clear at this time which version of the story (if any) is true.[1]

Hennepin County's identification of Perryman as the robber—either by facial recognition software, simple human comparison of photos, or some combination of the two—was in direct conflict with exculpatory information that Hennepin County had in its

---

[1]   After this lawsuit was filed, Hennepin County changed its story yet again, this time to state that facial recognition software was not used by the CISA team at all to identify Perryman—directly contradicting what Hennepin County told the Judge in the expungement matter. (*See* Doc. 12 at p. 4, n.2.)

possession regarding Mr. Perryman. (*Id.* at ¶¶ 27–30.) Hennepin County was in possession of a prior booking photo and prior booking information about Mr. Perryman. Included was information that Mr. Perryman: (1) had tattoos on both forearms; (2) was 6'2" tall; and (3) was 135–150 pounds. (*Id.*) Hennepin County knew that the suspect at issue: (1) had no tattoos on his forearms; (2) was 5'9" tall; and (3) was 35 pounds heavier than Mr. Perryman. (*Id.*) Despite this plainly exculpatory information being in the possession of Hennepin County at the time it made its incorrect identification, it ignored this information and proceeded to inform the Bloomington Defendants that Perryman was their suspect, kicking off the avalanche of events which ultimately led to Perryman's wrongful arrest, detention, house arrest, and prosecution.

Not only was the identification directly contrary to exculpatory information that Hennepin County possessed about Mr. Perryman, but it was also in violation of Hennepin County's written policies with respect to identification of suspects. (*Id.* at ¶¶ 117–23.) Hennepin County Sheriff's Office Policy Manual states that facial recognition software should not be used to positively identify individuals. (*Id.*) The policy furthers that analysts using facial recognition software must also use other suspect information like height, weight, age, and facial features in order to verify matches. (*Id.*) This is because—as the manual admits—"This technology is not absolute nor reliable." (*Id.*) In fact, facial recognition software is notoriously bad at identifying certain groups, specifically Black men, like Mr. Perryman. (*Id.* at ¶¶ 113–14.) Despite this, Hennepin County performed an identification of Mr. Perryman that violated its own written policies to Mr. Perryman's detriment.

Eventually, after months of Mr. Perryman and his defense counsel presenting exculpatory evidence (in addition to what Hennepin County had at the time of identification), alibis, and pleas for release, Hennepin County finally dropped the charges against Mr. Perryman and did not oppose expungement to remove these improper charges from Mr. Perryman's record. (*Id.* at ¶¶ 73–94.) Nor does Hennepin County challenge in this action that the arrest was indeed unlawful. (*See* Doc. 12 at pp. 14–15.)

Now, Hennepin County seeks to avoid any liability for its egregious misidentification and prolonged prosecution of Mr. Perryman—a misidentification and prosecution that flew in the face of exculpatory evidence in Hennepin County's possession and its own policies regarding how identifications ought to be performed. It should not be permitted to do so.

**Legal Standard**

In considering a motion to dismiss under Rule 12(b)(6), the complaint is read as a whole, the pleadings are construed in the light most favorable to the non-moving party, and the facts alleged in the complaint must be taken as true. *Ashley County, Ark. v. Pfizer, Inc.*, 552 F.3d 659, 665 (8th Cir. 2009). In addition, the Court must "resolve any ambiguities concerning the sufficiency of the plaintiff's claims in favor of the plaintiff and give the plaintiff the benefit of every reasonable inference drawn from the well-pleaded facts and allegations in their complaint." *Ossman v. DianaCorp.*, 825 F. Supp. 870, 880 (D. Minn. 1993) (internal quotation marks and citations omitted). "A well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and that a recovery is very remote and unlikely." *Id.* (internal quotations omitted). Instead, a

plaintiff need only "plead facts sufficient to show that her claim has substantive plausibility." *Johnson v. City of Shelby, Miss.*, 574 U.S. 10, 12 (2014). Substantive plausibility merely requires that the Court has enough factual content to be able to draw a reasonable inference that the defendant is liable for the alleged misconduct. *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009) ("A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."). "The complaint should be read as a whole, not parsed piece by piece to determine whether each allegation, in isolation, is plausible." *Braden v. Wal-Mart Stores, Inc.*, 588 F.3d 585, 594 (8th Cir. 2009) (citation omitted).

As discussed below, Plaintiff has alleged sufficient facts for the Court to conclude that he has pleaded plausible and actionable claims against Hennepin County, and the Court should deny Hennepin County's Motion to Dismiss in its entirety.

## Argument

Plaintiff has done more than enough to plead plausible claims against Hennepin County, despite Hennepin County's bald say-so to the contrary.[2] First, Plaintiff has pleaded ample facts to proceed on his Section 1983 claim; the Complaint alleges in great detail how

---

[2] As an initial point, Hennepin County refused to meaningfully meet and confer about the basis of its Motion, in violation of the Rules of Civil Procedure and Local Rules. Instead, they called the meet-and-confer requirement a mere "formality." *See* Affidavit of Claire C. Barlow, Exhibit A. They refused to inform Plaintiff of the basis for the motion to dismiss, instead simply stating that "Hennepin County does not believe that the Complaint contains sufficient well-pleaded facts to plausibly allege any of these claims under *Twombly/Iqbal*." *Id.* What's more, Hennepin County's Motion to Dismiss barely touches on *Twombly/Iqbal* at all, and the sections on state tort claims and immunity are not discussed under this framework. As such, those allegations were inappropriately brought without meeting the meet-and-confer requirement.

Hennepin County's failure to train its employees with respect to suspect identification—particularly via use of facial recognition software—constitutes a policy, custom, or failure to train which caused the injuries to Plaintiff here. Second, Hennepin County is not entitled to official immunity in any respect because its duties in question were either ministerial and negligently performed or discretionary but willfully and maliciously performed. Third, Plaintiff is entitled to relief under the Minnesota Constitution and for his false arrest claims; Hennepin County's misunderstanding of the law as articulated in its Motion to Dismiss does not compel a different result. Finally, while Hennepin County's Motion notes that it moves to dismiss the Count IV civil conspiracy claim, there is no discussion of that claim at all, even under the Motion's generic Section 1983 section.[3] Accordingly, those claims should also fail.

---

[3]   The civil conspiracy claim is asserted *directly* against the City of Bloomington, Hennepin County, and the Doe entities, not based on a theory of respondeat superior. (Doc. 1 at ¶¶ 169–81.) Civil conspiracy claims are separate and distinct from *Monell* claims. *See Goyette v. City of Minneapolis*, No. 20-CV-1302, 2021 WL 3222495, *10 (D. Minn. July 29, 2021); *Tirado v. City of Minneapolis*, 521 F. Supp. 3d 833, 840–46 (D. Minn. 2021) (discussing Section 1983 claim for civil conspiracy against a city separately from *Monell* claims). "To establish civil conspiracy liability for a municipal entity under § 1983, Plaintiffs must show that the municipal entity itself had involvement in the conspiracy, not merely rely on a theory of respondeat superior." *Robertson v. Breakthrough Towing, LLC*, No. 19-10266, 2022 WL 4292314, at *17 (E.D. Mich. Sept. 16, 2022). Hennepin County does not discuss this legal framework at all, and its discussion of the Section 1983 claim cannot entitle it to dismissal of the conspiracy claim.

I. **Hennepin County is liable under Section 1983 as its failure to adequately train its employees led to Mr. Perryman's improper identification, arrest, and prosecution.**

Plaintiff adequately pleaded a *Monell* cause of action against Hennepin County. At bottom, either a Hennepin County employee or the County's facial recognition software falsely identified Kylese Perryman, despite reams of evidence available to the County that Mr. Perryman could not possibly be the robber—and Hennepin County proceeded with reporting the identification to the Bloomington Defendants anyway. Hennepin County—a municipality—may be held liable for these constitutional violations as long as they resulted from: (1) an official municipal policy; (2) an unofficial custom; or (3) a deliberately indifferent failure to train or supervise. *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690–91 (1978). Hennepin County is in a double bind: either the County has a policy or custom that permits staff to use facial recognition software in a way that risks near-certain constitutional violations, or they have failed to train staff in the proper use of facial recognition; in either scenario—and both are sufficiently pleaded—Mr. Perryman is entitled to damages under Section 1983. The law does not permit Hennepin County, its employees, or its software to arrest and prosecute innocent civilians based on a faulty determination that Black men look alike.

A. **Plaintiff's claims regarding Hennepin County's policies and customs are properly pleaded.**

As a threshold matter, because *Monell* plaintiffs often lack access to municipal policy information at this early stage of litigation, courts have held that failure "to specifically plead the existence of an unconstitutional policy or custom, in itself, is not fatal

to [a] claim for relief." *Doe ex rel. Doe v. Sch. Dist. of City of Norfolk*, 340 F.3d 605, 614 (8th Cir. 2003). "When a complaint is filed, a plaintiff may not be privy to the facts necessary to accurately describe or identify any policies or customs which may have caused the deprivation of a constitutional right." *Id.* The *Doe* court explained that forcing plaintiffs to plead *Monell* claims—including descriptions of specific unconstitutional policies, customs, or related incidents—with specificity would "disregard the liberality of Fed. R. Civ. P. 8(a)(2)." *Id.* Rather, the inquiry is simply whether a complaint "allege[s] facts which would support the existence of an unconstitutional policy or custom." *Id.*

Hennepin County wants to hold Plaintiff to a standard much higher than that of Rules 8 and 12 by forcing him to plead his *Monell* claim with painstaking specificity. But at "the pleading stage, even if a plaintiff cannot identify the full scope of an alleged custom or policy, the key to surviving dismissal is that the complaint must allege facts which would support the existence of an unconstitutional policy or custom." *Tirado v. City of Minneapolis*, 521 F. Supp. 3d 833, 841–42 (D. Minn. 2021) (internal quotations omitted).

Here, Plaintiff pleaded facts that support the existence of an unconstitutional policy or custom. The Complaint alleges that Hennepin County has training in place that requires employees operating facial recognition software to always cross-check positive software identifications with an independent verification of facial features and to never rely on a software identification alone to positively identify an individual. (Doc. 1 at ¶¶ 117, 120–21.) This training was not followed. This failure to comply evidences either a failure to properly train employees (*see* discussion *infra* Section I(B)), or evidences a custom in Hennepin County to use facial recognition software in ways that it is not supposed to be

used and that violate citizens' constitutional rights. In either event, the facts as alleged are sufficient to support the existence of an unconstitutional policy or custom. A true fatal deficiency exists in pleadings only where there is "the complete absence of allegations, reference, or language by which one could begin to draw an inference that the conduct complained of . . . resulted from an unconstitutional policy or custom[.]" *Doe*, 340 F.3d at 614. There is no such complete absence here, and Plaintiff's claims with respect to policy and custom are adequately pleaded.[4]

Hennepin County seems to take issue with the fact that it believes Plaintiff has not alleged a "widespread, persistent pattern of unconstitutional misconduct." (Doc. 12 at 9.) Hennepin County's claim amounts to a suggestion that it should not be held liable for its demonstrably dangerous failure to train/enforce its policies with respect to identification simply because its failure has not caused *enough* publicly-known rights violations yet. First, as described, Plaintiff is not required to plead numerous instances with specificity at this stage. *Tirado*, 521 F. Supp. 3d at 841–42 (D. Minn. 2021). Second, a failure to train can constitute an actionable policy under *Monell*, *see City of Canton, Ohio v. Harris*, 489 U.S. 378, 389 (1989)), which Defendant admits, (Doc. 12 at 12), and failure to train under *Monell* can be adequately pleaded even by a single instance where the failure would so

---

[4]   Hennepin County makes a lengthy, hypothetical argument that *if* Plaintiff's position is that Hennepin County failed to discipline its officers, it would not be liable on that basis. (Doc. 12 at pp. 10–11.) Plaintiff's argument is not, in fact, that Hennepin County's failure to discipline gives rise to liability, but rather that its failure to train and/or its policies/customs related to how identifications are made give rise to its liability here.

obviously lead to constitutional violations.[5] *Id.* at 412; *see also* discussion *infra* Section I(B), pp. 12–15. The constitutional violations at risk, of course, include the violations at issue here, such as violation of Fourth Amendment rights, leading to wrongful searches, seizures, arrests, and prosecutions. This Court is not required to—and should not—sit and wait for Hennepin County to continue the arrest of innocent Black men based on biased misidentification until "enough" have been improperly jailed to take action; Hennepin County should be held responsible for their improper policies/customs with respect to identification procedures now.

### B. Plaintiff properly pleaded that Hennepin County failed to train its employees with respect to suspect identifications.

Even setting aside Hennepin County's arguments regarding policies and customs, Plaintiff's well-pleaded claim for failure to train is enough to sustain a *Monell* claim. To establish a Section 1983 claim under *Monell*, a plaintiff can show an unconstitutional policy, custom, *or* indifferent failure to train; he need not plead and prove each, meaning this is an independent basis on which Plaintiff's *Monell* claim can proceed. *Monell*, 436 U.S. at 690–91. The Complaint adequately pleads that Hennepin County's failure to properly train its employees with respect to the use of facial recognition software resulted in deprivation of Plaintiff's constitutional rights. In failing to adequately train its

---

[5]  A single act may also be sufficient to prove a *Monell* violation where a chief policymaker ratified the decision that leads to constitutional violation. *See Pembaur v. City of Cincinnati*, 475 U.S. 469, 480, (1986).

employees, Hennepin County willfully ignored a patently obvious risk that an individual's constitutional rights would likely be violated by misidentification.

A municipality is liable for failure to train when its failure causes a deprivation of constitutional rights. To prove a Section 1983 failure to train claim, a plaintiff must plead with respect to a defendant that: "(1) its training practices are inadequate; (2) it was deliberately indifferent to the rights of others in adopting the training practices, such that the failure to train reflects a deliberate or conscious choice; and (3) the deficient training caused a plaintiff's injury." *T.B. by & through Bursch v. Indep. Sch. Dist. 112*, 620 F. Supp. 3d 818, 835 (D. Minn. 2022) (citing *Parrish v. Ball*, 594 F.3d 993, 997 (8th Cir. 2010)). Deliberate indifference is proven by showing that a government actor "disregarded a known or obvious consequence of his action[.]" *S.M. v. Lincoln Cnty.*, 874 F.3d 581, 585 (8th Cir. 2017). This is ordinarily evidenced by proof of similar conduct but can also be demonstrated in stand-alone instances where the risk of constitutional violation is "patently obvious." *Connick v. Thompson*, 563 U.S. 51, 64 (2011).

A single instance of a *Monell* failure to train claim can survive a motion to dismiss where the failure to train so obviously could lead to constitutional rights violations. In order to find liability for a single decision, there must be evidence that would support a finding that it was obvious that the lack of training was "highly likely to inflict the particular injury suffered by the plaintiff." *Canton*, 489 U.S. at 412 (1989). Liability in single instance cases turns on "[t]he likelihood that the situation will recur and the predictability that an officer lacking specific tools to handle that situation will violate citizens' rights." *Id.* at 409.

Hennepin County's failure to train employees on proper use of facial recognition technology is actionable under Section 1983. Plaintiff alleged that Hennepin County's training practices were inadequate in that it failed to properly train its CISA employees on either the use of facial recognition software or the proper way to identify a suspect from booking materials. (*See, e.g.*, Doc. 1 at ¶¶ 117–26, 158–68.) Plaintiff alleged that Hennepin County's failure to train was deliberately indifferent to the rights of others, especially because as it is well-known—so well-known that it is even included in Hennepin County's manuals—that facial recognition software is notoriously inaccurate and unreliable. (*Id.* at ¶¶ 113–22.) To allow County employees to use and rely on admittedly unreliable software without adequate training puts individuals—like Mr. Perryman—at risk of improper and unwarranted arrest and detention in violation of their constitutional rights. That is exactly what happened here. Hennepin County's failure to train ignores its own knowledge about the limitations of facial recognition software, and those limitations especially put at risk marginalized groups. (*See id.* at ¶¶ 113–14, 164.) These concerns were actually known to Hennepin County (as made evident by the admissions of its policy manual), and even if they allege they were not, the concerns are so patently obvious that Hennepin County should have known and should have trained its employees to avoid the risk of false arrests.[6]

---

[6] Hennepin County cherry-picks allegations out of the complaint to state that the claims are inadequately pleaded. (*See generally,* Doc. 12 at pp. 8, 11, 13–14.) In reality, "[t]he complaint should be read as a whole, not parsed piece by piece to determine whether each allegation, in isolation, is plausible." *Braden v. Wal-Mart Stores, Inc.*, 588 F.3d 585, 594 (8th Cir. 2009) (citation omitted). When reading the voluminous facts as pleaded by Mr. Perryman alongside the specific legal allegations from Count III, there is no question that Plaintiff has pleaded an actionable failure to train claim.

Hennepin County is liable based on the facts alleged. As was alleged in the Complaint, either a Hennepin County CISA employee looked at random booking photos and decided that Mr. Perryman and the robbery suspect were the same person, while ignoring exculpatory evidence in its possession (such as Mr. Perryman's tattoos, height, and weight), or facial recognition software in some way falsely identified Mr. Perryman, and a County employee relied on that identification with no further verification. Training employees such that they are willing to proceed this way is insufficient and deliberately indifferent to the rights of those who are arrested based on faulty identifications.

And this single instance is enough to support liability under *Monell* and *Canton.* It is highly likely and predictable that this situation will recur and rights will continuously be violated unless Hennepin County begins adequately training its officers on identification procedures, especially as they relate to use of facial recognition software. *See Canton*, 489 U.S. at 409 (describing that a single instance can survive dismissal if the issue will predictably recur). In a world that is rapidly becoming increasingly automated and reliant on Artificial Intelligence and related technology, the use of tools like facial recognition software are quickly becoming prominent. If Hennepin County is allowed to continue its unchecked misuse of these tools, more people—and specifically Black men—will be falsely identified and deprived of their rights. Hennepin County should not be let off the hook for its violation of Mr. Perryman's rights simply based on the premise that it has not wrongly identified, arrested, and prosecuted enough innocent people that we know of *yet.*

Under Section 1983, government officials shall be liable for their customs, policies, and/or failure to train that result in constitutional violations; here, Mr. Perryman was

targeted based on his race and deprived of his constitutional right to liberty based on Hennepin County's policy, custom, and/or failure to train with respect to notoriously unreliable facial recognition software. Plaintiff's Complaint more than sufficiently pleads these facts, and Hennepin County's Motion to Dismiss should be denied.

## II.      Hennepin County is not entitled to immunity.[7]

Hennepin County is not entitled to immunity for these claims in any respect. Section 466.02 of the Minnesota Statutes states that "every municipality is subject to liability for its torts *and* those of its officers, employees and agents acting within the scope of their employment or duties." Minn. Stat. § 466.02 (2004).[8] The Minnesota Supreme Court has repeatedly stated that municipalities are generally liable for the torts of their employees if the tort is committed within the scope of employment. *Nusbaum v. County of Blue Earth*, 422 N.W.2d 713, 718 (Minn.1988). While immunity exists in some contexts, the United States Supreme Court has stated that immunity law should be "extended no further than its justification would warrant." *Harlow v. Fitzgerald*, 457 U.S. 800, 811 (1982). It is an affirmative defense, and the burden of proving it lies with the person asserting it. *Id*. at 815, 819.

As an initial matter, immunity is an affirmative defense that is generally inappropriate for a motion to dismiss. *Johnson v. City of Minneapolis*, 901 F.3d 963, 972

---

7   Hennepin County did not make a claim for statutory immunity; it makes arguments only for official immunity based on the common law.

8   A county is defined as a "municipality" under the statute. *See* Minn. Stat. § 466.01, subd. 1; *Doe v. Park Ctr. High Sch.*, 592 N.W.2d 131, 134 (Minn. Ct. App. 1999).

(8th Cir. 2018) (stating that whether official immunity controls is a question for the jury).[9]

To overcome a defense of qualified immunity on a motion to dismiss, the complaint need only allege sufficient facts to establish that "the official's conduct violated a constitutional right," and "whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Groenewold v. Kelley*, 888 F.3d 365, 371 (8th Cir. 2018) (quoting *Clemmons v. Armontrout*, 477 F.3d 962, 965 (8th Cir. 2007) (quotations omitted)).

Here, Hennepin County is not entitled to immunity. First, immunity is not available where a government official performed a ministerial duty negligently; the identification of suspects is a ministerial duty, and Hennepin County performed it negligently by not adequately verifying the facial recognition software's identification and/or by ignoring exculpatory evidence in its possession related to Mr. Perryman. Second, even if this Court found Hennepin County's actions to be discretionary and not ministerial, it is still not entitled to immunity because the identification, arrest, and prosecution of a man whom Hennepin County had reason to know was innocent is willful and malicious, barring immunity. Finally, vicarious official immunity is not available, both because official

---

[9]   The question of immunity will always be dependent on the facts governing the claim. Federal District Courts in Minnesota regularly have held that official immunity is a question for the jury. *Gaines v. City of Minneapolis*, No. CV 18-838, 2019 WL 7283992, *3 (D. Minn. Dec. 27, 2019) (a reasonable jury could determine that Bauer acted with the requisite intent to foreclose official immunity. The application of official immunity must await the factfinder's determination of the facts.); *Ward v. Olson*, 939 F.Supp.2d 956, 964 (D. Minn. 2013) ("Malice in the context of official immunity means intentionally committing an act that the [officer] has reason to believe is legally prohibited." *Kelly v. City of Minneapolis*, 598 N.W.2d 657, 663 (Minn. 1999) (citation omitted). The determination of whether an officer acted maliciously or willfully—a factor in determining entitlement to immunity—is a question of fact for the jury. *See Elwood v. Rice Cnty.*, 423 N.W.2d 671, 677 (Minn. 1988).

immunity is not available generally, and because Courts do not condone granting vicarious official immunity in instances where the officials' challenged conduct results from the lack of adoption of a policy that could have and should have been put in place. At bottom, Hennepin County's tremendous misconduct and deliberate disregard of Mr. Perryman's constitutional protections cannot entitle it to a grant of immunity—and certainly not at the pleadings stage.

### A.   Hennepin County is not entitled to official immunity because it negligently performed its ministerial duties.

The common-law doctrine of official immunity shields public officials from personal liability when sued for actions which requires the exercise of their judgment and discretion, unless the official is guilty of a willful or malicious wrong. *Vassallo ex rel. Brown v. Majeski*, 842 N.W.2d 456, 462 (Minn. 2014). The purpose of the official immunity doctrine is to ensure that "individual government actors [are] able to perform their duties effectively, without fear of personal liability that might inhibit the exercise of their independent judgment." *Kariniemi v. City of Rockford*, 882 N.W.2d 593, 599–600 (Minn. 2016) (quotation omitted); *see also Elwood*, 423 N.W.2d at 678. That said, public officials always have a duty to adhere to the law. *Wiederholt v. City of Minneapolis*, 581 N.W.2d 312, 316 (Minn. 1998); *Waste Recovery Co-op. of Minn. v. Cnty. of Hennepin*, 517 N.W.2d 329, 332 (Minn.1994).

Analyzing an official immunity claim requires a three-step process. First, the court must identify the "the conduct at issue." *Kariniemi*, 882 N.W.2d at 600. Second, the public official's conduct is reviewed so that the court may determine if the conduct was

17

discretionary in nature, requiring "the exercise of individual judgment in carrying out the official's duties" or ministerial, involving "mer[e] execution of a specific duty arising from fixed or designated facts." *Kari v. City of Maplewood*, 582 N.W.2d 921, 923 (Minn. 1998). A public official's conduct will be deemed ministerial, rather than discretionary, if it arises from duties that are "'absolute, certain, and imperative,'" thereby "leaving nothing to the discretion of the official." *Kelly v. City of Minneapolis*, 598 N.W.2d 657, 664 (Minn. 1999) (quoting *Cook v. Trovatten*, 274 N.W. 165, 167 (Minn. 1937)). If the public official in question is found to have engaged in ministerial conduct, they are *not* entitled to official immunity if the ministerial duty "was either not performed or was performed negligently." *Anderson v. Anoka Hennepin Indep. Sch. Dist. 11*, 678 N.W.2d 651, 660 (Minn. 2004). Finally, if the public official was engaged in discretionary conduct, the court must also consider whether his or her conduct was willful or malicious. *Kariniemi*, 882 N.W.2d at 600; *Kelly*, 598 N.W.2d at 664. Here, the actions of the Hennepin County employees are ministerial in nature, and they are not eligible for immunity because the facts alleged in the Complaint clearly show that the ministerial duties at issue in this case were performed negligently.

First, Hennepin County's procedure to identify suspects is a ministerial action. As stated in the Complaint, Section 800.7 of the Hennepin County Sheriff's Manual states that CISA employees are not to use facial recognition to "identify an individual." (Doc. 1 ¶ 117.) They are merely tasked with running the software and verifying that the software issued an accurate match. (Doc. 1 at ¶¶ 120–21.) There is no discretion involved. Confirmation of the software's accuracy is nothing more than the "mer[e] execution of a

specific duty arising from fixed or designated facts." *Kari*, 582 N.W.2d at 923. Therefore, the use of facial recognition software is ministerial in nature under Hennepin County's own policies.[10]

Second, the Complaint adequately alleges that Hennepin County's employees were negligent in the execution of their duties. Though Hennepin County attempts to argue that Perryman failed to plead facts to support the contention that "CISA employees relied on information that they knew to be false," this is an impermissibly narrow reading of the Complaint. (Doc. 12 at 16.) The Complaint alleges that Hennepin County acted negligently because Hennepin County *knew* that Mr. Perryman could not have been the perpetrator of the crimes for which they arrested him. For example, the Complaint alleges that the suspect was known to have no tattoos on his forearms, but Hennepin County's previous booking information of Mr. Perryman documented that he had forearm tattoos. (Doc. 1 at ¶ 27.) Hennepin County had this information at the time of the misidentification, and it was enough to entirely exculpate Mr. Perryman. Hennepin County was in possession of other information about Mr. Perryman and the suspect at the time of the misidentification that would prove Mr. Perryman could not have been the suspect, including that Mr. Perryman was known to be 6'2" tall and 135–150 pounds, while the suspect was known to be around 5'9" tall and approximately 35 pounds heavier. (Doc. 1 at ¶ 29.) Finally, a basic comparison of the images of the suspect and Hennepin County's booking photo of Perryman shows

---

[10]   Hennepin County's contention that its actions in this case were discretionary seems to imply that its employees had a custom to regularly violate Hennepin County's own internal policies and procedures or that they were inadequately trained on the same, supporting Plaintiff's *Monell* claim. *See* discussion *supra* Section I.

that their facial features are plainly distinct. Hennepin County was in possession of a plethora of exculpatory information about Mr. Perryman at the time it made the identification, yet it proceeded to report the misidentification to Bloomington anyway. Hennepin County negligently failed to perform any verification of the identification in violation of the prescribed ministerial duty from the County's written policy. These actions constitute the negligent performance of ministerial identification duties.

In addition, not only did the evidence in Hennepin County's possession conclusively show that Mr. Perryman could not have been their suspect, but it also remains unclear what evidence, if any, Hennepin County employees actually did possess to support his guilt. Consequently, while the facts alleged in the Complaint certainly show negligence, they also allege a basic truth—Hennepin County knew that Mr. Perryman could not have been the robbery suspect but identified and charged him anyway. Hennepin County wrongfully identified and arrested a man without legal justification or excuse, willfully violating Mr. Perryman's rights in the process. This negligent performance of a ministerial duty does not entitle Hennepin County to immunity.

### B. Even if Hennepin County's behavior was discretionary, it would still not be subject to immunity because it was unreasonable, willful, and malicious.

Hennepin County has not met its burden to show how it is entitled to immunity. Besides a basic recitation of the elements of immunity, it has not offered any argument to show why immunity should be granted here even if the conduct at issue is found to be discretionary.

As applied to discretionary conduct, courts may only apply official immunity to bar a tort claim when an official demonstrates that: (1) their conduct was "objectively" legally reasonable, meaning that it was legally justified under the circumstances; (2) their conduct was "subjectively" legally reasonable, that is, taken with subjective good faith; or (3) the right allegedly violated was not clearly established, that is, that there was no basis for knowing the conduct would violate the plaintiff's rights. *Gleason v. Metro. Council Transit Operations*, 563 N.W.2d 309, 318 (Minn. Ct. App. 1997), *aff'd in part*, 582 N.W.2d 216 (Minn. 1998). Official immunity does not extend to legally unreasonable actions that come within the "willful or malicious" exception to an official's discretionary immunity. *Mellgren v. City of Minneapolis*, No. C3-98-1405, 1999 WL 10239, at *1 (Minn. Ct. App. Jan. 12, 1999) (*citing Watson ex rel. Hanson v. Metro. Transit Comm'n*, 553 N.W.2d 406, 414 (Minn. 1996)); *see also State by Beaulieu v. City of Mounds View*, 518 N.W.2d 567, 571–72 (Minn. 1994). When a plaintiff has alleged that an official's conduct was legally unreasonable, the government has the burden of showing it was legally reasonable. *See Rehn v. Fischley*, 557 N.W.2d 328, 333 (Minn. 1997) (stating that the burden is on the party asserting immunity).

There is no immunity for willful or malicious discretionary conduct. Willful or malicious conduct is the "intentional doing of a wrongful act without legal justification or excuse[.]" *Miskovich v. Indep. Sch. Dist. 318*, 226 F. Supp. 2d 990, 1021 (D. Minn. 2002). Stated otherwise, "[m]alice in the context of official immunity means intentionally committing an act that the official has reason to believe is legally prohibited." *Id.* at 664. The question of malice is an "objective inquiry into the legal reasonableness of an official's

actions." *Dokman v. Cnty. of Hennepin*, 637 N.W.2d 286, 288 (Minn. Ct. App. 2001) (quoting *Beaulieu*, 518 N.W.2d at 571). Malice in the context of immunity connotes a concept *unrelated* to "ill will" or "improper motive." *See Rico v. State*, 472 N.W.2d 100, 107 n.5 (Minn. 1991) (distinguishing malice in the defamation context).

As a peace officer, Does and Hennepin County are assumed to be aware of the law. *See Mellgren*, 1999 WL 10239, at *3; *Rico*, 472 N.W.2d at 109 (imputing "knowledge of the law to public officials"); *Mayard v. Siegfried*, No. 08-5853, 2011 WL 579334, *6 (D. Minn. Feb. 8, 2011) (holding that the defendant is not protected by official immunity for his actions because the jury could reasonably conclude that the defendant knew his conduct was legally prohibited). Consequently, they are aware that identifying a person they have reason to know is innocent is both unreasonable and illegal. Moreover, the right that Defendants violated—Perryman's right to be free from unreasonable seizure or unlawful detention—is a well-established and fundamental right. *See* Minn. Const. Art. 1 § 10; U.S. Const. Art. IV.

Hennepin County's malice forecloses immunity. This is in direct contrast to the *Peterson* case that Hennepin Country tries to allege is analogous. (Doc. 12 at 16 (citing *Peterson v. City of Minneapolis,* No. A22-0518, 2022 WL 17574754 (Minn. Ct. App. Dec. 12, 2022).) In *Peterson*, a sergeant, after receiving a tip, mistakenly identified someone as the perpetrator of an assault they did not commit. *Peterson*, 2022 WL 17574754, *1. The sergeant "investigated" the tip by comparing the suspect's Facebook profile, driver's license photo, and a video of the assault. The court determined that the identification was

discretionary and not malicious, so immunity was proper. *Id.* at *3.[11] However, the key distinction is that the sergeant in *Peterson* was not otherwise in possession of exculpatory information about the person he identified as the assailant, meaning the court did not find malice. *Id.* The Court in granting immunity stated that the "facts cannot establish that [the sergeant] knowingly and willfully initiated a groundless prosecution." *Id.* The same cannot be said here. Hennepin County knew that Perryman could not be the suspect; he was the wrong height, wrong weight, and has multiple tattoos which the suspect did not, as evidenced by comparing the Walmart surveillance footage with Perryman's prior booking information that was in Hennepin County's possession. And yet, they knowingly and willfully initiated a groundless prosecution, which the court in *Peterson* indicated would be grounds for denial of immunity. This is grounds for a finding of malice and a denial of immunity.

Consequently, even if this Court should find that the conduct at issue was discretionary in nature, it should still find that the actions of Hennepin County were willful and malicious such to fall outside the scope of actions protected by official immunity.

### C.     Hennepin County is not entitled to vicarious official immunity.

Vicarious immunity does not protect Hennepin County either. The doctrine of vicarious official immunity can shield a municipality from liability based on the conduct

---

[11]   Notably, the Court found that this investigation was discretionary and not ministerial because the Plaintiff could not identify a policy that was supposed to govern the officer's conduct. *Peterson*, 2022 WL 17574754, at *3. This, again, is distinguishable from this case, where Hennepin County has a policy on how facial recognition software should be used in executing identifications; the policy was not followed here.

of an employee who is protected by official immunity. *Id.* at 663–65; *Wiederholt*, 581 N.W.2d at 316; *Meier v. City of Columbia Heights*, 686 N.W.2d 858, 866–67 (Minn. Ct. App. 2004), *review denied* (Minn. Dec. 14, 2004). The policy rationale for vicarious immunity is to prevent government workers second-guessing themselves "in anticipation that their government employer would also sustain liability." *Meier*, 686 N.W.2d at 866 (*citing Anderson*, 678 N.W.2d at 663–64). Said differently, vicarious immunity is a policy consideration for the Court. Immunity is transferred when the Court finds that failing to do so will stifle or stop certain decisions from happening. *Anderson*, 678 N.W.2d at 664.

Vicarious immunity is not available here. As a threshold matter, the possibility of vicarious immunity is only available to municipalities if it is first established that the underlying conduct of their employees is protected by official immunity. As shown above, Hennepin County's employees are not entitled to immunity. *See* discussion *supra* at pp. 17–24. Vicarious official immunity is not automatic and the burden of establishing why the municipality should be given official immunity is on the defendant.[12] *Meier*, 686 N.W.2d at 863 (stating that "the party asserting immunity has the burden of showing particular facts demonstrating an entitlement to immunity."). Hennepin County did not analyze this requirement and thus their argument—that because "the unnamed Hennepin County CISA employees are entitled to official immunity, Hennepin County is vicariously immune"— fails.

---

[12] The only exception is that vicarious official immunity automatically follows a finding of official immunity in high-speed police pursuit cases. *Pletan v. Gaines*, 494 N.W.2d 38, 43 (Minn. 1992). Otherwise, whether a party is entitled to vicarious immunity "hinges on a policy analysis." *Meier*, 686 N.W.2d at 867.

However, even if this Court finds that the Hennepin County employees are shielded by official immunity, this immunity should still not be extended to Hennepin County because doing so would reward the municipality for inaction/failure to put in place protective measures to ensure proper identification of subjects. Minnesota courts consistently deny immunity where an official neglected to take reasonable action that would have prevented the issue in question from occurring. *See e.g.*, *Meier*, 686 N.W.2d at 866; *S.W. v. Spring Lake Park Sch. Dist. No. 16*, 592 N.W.2d 870, 876–77 (Minn. Ct. App. 1999), *aff'd without opinion,* 606 N.W.2d 61 (Minn. 2000) (refusing to extend the application of vicarious official immunity to claims against a school district involving an attack of a student in a locker room). Whether a party is entitled to vicarious immunity "hinges on a policy analysis." *Meier*, 686 N.W.2d at 867. As an example, in *Spring Lake Park*, the Court of Appeals held that although the district employees were entitled to official immunity because their actions and conduct in relation to the student attack were not ministerial and were discretionary, the district was not entitled to official immunity where it had neglected to adopt a formal security policy because none of the employees' conduct fell within an assigned duty or legitimately adopted policy. *Id*. at 876–77. Official immunity was not extended to the district because the employees at issue were not performing actions which fell within their assigned duties. *Id*.

The conduct at issue here—the false identification, arrest, and imprisonment of a man whom Hennepin County knew could not have been the suspect—is not the type of behavior or policy that courts support or uphold. *Shqeirat v. U.S. Airways Grp. Inc.,* 645 F. Supp. 2d 765, 788 (D. Minn. 2009) (finding that under Minnesota law, police officer

defendants were not entitled to official immunity where they unlawfully arrested Muslim clerics); *Adewale v. Whalen,* 21 F. Supp. 2d 1006, 1016 (D. Minn. 1998) (reversing summary judgement on official immunity grounds was where there was a genuine fact dispute as to whether plaintiff was falsely arrested under Minnesota law). Consequently, Hennepin County has not met its burden to show it should be afforded vicarious official immunity where it failed to create adequate trainings or policies to prevent the knowingly false identification (and later arrest) of an innocent man. Immunity cannot be used to protect such behavior.

Hennepin County has not met its burden to prove entitlement to immunity, especially at this early stage of this litigation where further factual development could be necessary in order to prove Hennepin County's relevant state of mind for immunity purposes. Accordingly, Hennepin County is not entitled to immunity in any respect, and this is not a basis for dismissal of Mr. Perryman's claims.

### III.  Plaintiff's claims under state law are properly pleaded and actionable.

Finally, Hennepin County's substantive arguments with respect to Perryman's state law claims are nothing more than misconceptions of Minnesota law, which do not warrant dismissal.

### A. Hennepin County is liable for false arrest as it instigated Mr. Perryman's arrest.

Hennepin County instigated Mr. Perryman's arrest by instructing Defendant Risdall to arrest him, cementing its liability for false arrest. False arrest requires an allegation of: (1) an arrest performed by the defendant; and (2) the unlawfulness of the arrest—nothing

more.[13] *Shqeirat*, 515 F. Supp. 2d at 999 (citing *Lundeen v. Renteria*, 224 N.W.2d 132, 135 (Minn. 1974)). Hennepin County's involvement in the identification and arrest of Kylese Perryman renders it liable for the false arrest.

Hennepin County argues that Defendant Risdall, not the County, made the arrest, so the County cannot be liable. They are wrong. A party's involvement in the initiation of the arrest is enough to include them in a claim for false arrest. *Shqeirat*, 515 F. Supp. 2d at 999–1000. For decades, law enforcement have attempted to avoid scrutiny by telling another law enforcement officer to make an arrest when the first individual did not have enough probable cause to do it themselves. That is what has happened here. Hennepin County made the identification of Mr. Perryman and subsequently told Defendant Risdall to make the arrest while they knew—or should have known—they did not have probable cause. The "Minnesota Supreme Court has recognized that a defendant may be liable for instigating an arrest by police officers." *Id.* at 999. Where a defendant instigates an arrest and does not have probable cause to do so, the defendant can be liable for false arrest, even if the arrest was effectuated by another party. *Ward v. Nat'l Car Rental Sys.*, 290 N.W.2d 441, 441–42 (Minn. 1980). Here, even if the Bloomington Defendants—including Defendant Risdall—actually arrested Mr. Perryman, the Complaint more than adequately alleges that Hennepin County's baseless identification was the instigating factor of the arrest.

---

[13] Hennepin County does not dispute in the Motion to Dismiss that the arrest was indeed unlawful. The only element in question is whether Hennepin County performed the arrest. (*See* Doc. 12 at pp. 14–15.)

Moreover, uncertainty about the plausibility of Plaintiff's allegations with respect to who made the instigating identification here here—if any—is the result only of Hennepin County's own bad faith. Hennepin County has been deliberately vague as to how Mr. Perryman was identified, by whom Mr. Perryman was identified, and how the events surrounding the identification led to Mr. Perryman's arrest. (*See, e.g.*, Doc. 1 at ¶¶ 107– 12.) Plaintiff should not be punished for pleading any uncertainties surrounding his identification and arrest that Hennepin County itself created in an effort to obfuscate the truth. In any event, it is certain and adequately pleaded that Hennepin County and its employees were: (a) involved in the initial identification of Mr. Perryman; and (b) in possession of information at the time of the identification that would definitively prove Mr. Perryman's innocence. They proceeded with the identification and arrest anyway.

The well-pleaded allegations support that Hennepin County employees knowingly or recklessly gave false information to Defendant Risdall in order to effectuate the arrest; this is sufficient to plead false arrest against Hennepin County under Minnesota law.

**B. Plaintiff may bring injunctive claims under the Minnesota Constitution.**

Hennepin County misstates the law with respect to the state constitutional claims. Currently, *money damages* for violations of the Minnesota Constitution are not actionable. However, Plaintiff has not asserted claims for money damages under this Count. Plaintiff asserted claims for injunctive relief against Hennepin County for violation of his rights under Article 1, Section 10 of the Minnesota Constitution relating to Unlawful Seizures. (*See* Doc. 1 at ¶ 227.)

Plaintiffs indeed have a private cause of action for violation of the Minnesota Constitution when seeking injunctive and declaratory relief for state constitutional violations. Decisions of both the Minnesota Supreme Court and this Court further support this result. In *Doe v. Gomez*, the Minnesota Supreme Court affirmed a district court's injunction for violation of the Minnesota Constitution, including Article I, Section 10. 542 N.W.2d 17, 21 (Minn. 1995). Similarly, in *McGaughtry v. City of Red Wing*, the Minnesota Supreme Court reversed both lower courts' rulings that a claim for declaratory relief alleging violations of Article 1, Section 10 of the Minnesota Constitution was not justiciable. 808 N.W.2d 331, 340 (Minn. 2011). Decisions from this Court further support this result. *See, e.g., R.S. v. Minnewaska Area Sch. Dist.*, 894 F. Supp. 2d 1128, 1146 (D. Minn. 2012) (declining to dismiss state constitutional claims brought under Article I, Section 10).

Hennepin County's misunderstanding of Plaintiff's state constitutional claim is not a reason for dismissal. Plaintiff may proceed on his constitutional claim seeking injunctive relief.

## IV.     In the alternative, Plaintiff should be granted leave to amend.

In the event the Court finds that additional factual pleading is required—which it should not—Plaintiff respectfully requests leave to amend. Under Federal Rule of Civil Procedure 15, a court may grant leave to amend "when justice so requires." Fed. R. Civ. P. 15(a). Leave to amend is to be freely given. *Id.* Courts must read Rule 15 in conjunction with Federal Rule of Civil Procedure 7(b), which requires that a party make such a request in a motion that states with "particularity the grounds for seeking the order[.]" Fed. R. Civ.

P. 7(b). Further, the moving party should be permitted to have his claim adjudicated on the merits in the absence of the movant's undue delay; bad faith or dilatory motive; repeated failure to cure deficiencies by amendments previously allowed; undue prejudice to the opposing party by virtue of allowance of the amendment; or futility of amendment. *Foman v. Davis*, 371 U.S. 178, 181 (1962). Resolution of claims on their merits is favored under Federal Rule of Civil Procedure 15(a)(2), and "decisions on the merits [should not] be avoided on the basis of . . . mere technicalities." *Id.*

If additional factual pleading is required, amendment would be appropriate here. There is no colorable argument for any undue delay, improper motive, previous failure to cure, or undue prejudice. And given the weakness of Hennepin County's arguments for dismissing the Complaint as currently pleaded, any argument for the futility of amendment would be disingenuous. Perhaps most importantly, given the gravity of the constitutional violations that Hennepin County committed, dismissal of any counts without leave to amend would further perpetuate the miscarriages of justice against Mr. Perryman. Plaintiff respectfully requests the opportunity to amend, if it is so required.

### Conclusion

Hennepin County should be held liable for its baseless identification, arrest, and prosecution of Mr. Perryman, and nothing in its motion to dismiss warrants a different outcome. Each Count against Hennepin County is properly pleaded, is not subject to dismissal based on immunity, and entitles Mr. Perryman to the relief requested. Accordingly, Plaintiff respectfully requests that this Court deny Hennepin County's Motion to Dismiss in its entirety.

Respectfully submitted,

**NELSON MULLINS RILEY & SCARBOROUGH, LLP**

Dated: August 31, 2023          By: /s/Claire C. Barlow

Molly Jean Given (MN #0387713)
Isaac W. Messmore (MN #0393276)
Claire C. Barlow (MN #0402721)
1600 Utica Avenue South, Suite 750
Minneapolis, MN 55416
Tel: (612) 464-4500
Fax: (612) 255-0739
mollyjean.given@nelsonmullins.com
ike.messmore@nelsonmullins.com
claire.barlow@nelsonmullins.com

/s/Ian Bratlie

Ian Bratlie (MN #0319454)
Teresa Nelson (MN #0269736)
AMERICAN CIVIL LIBERTIES
UNION OF MINNESOTA
PO Box 14720
Minneapolis, MN 55414
Tel: (651) 645-4097
ibratlie@aclu-mn.org
tnelson@aclu-mn.org

***Attorneys for Plaintiff Kylese Perryman***