UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

Kylese Perryman,

          Plaintiff,

v.

City of Bloomington; Does 1-10, *individuals that are employees or agents of the Bloomington Police Department*; Detective Andrew Risdall; Hennepin County; and Does 11-20, *individuals that are employees or agents of Hennepin County*,

          Defendants.

Civil No. 23-1984 (DWF/DTS)

**MEMORANDUM OPINION AND ORDER**

___

Claire Christian Barlow, Esq., Molly J. Given Nietfeld, Esq., Nelson Mullins Riley & Scarborough LLP; Ian Bratlie, Esq., Teresa J. Nelson, Esq., ACLU of Minnesota; Isaac W. Messmore, Esq., Soule & Stull LLC, counsel for Plaintiff.

Aaron Mark Bostrom, Esq., Ashley Marie Ramstad, Esq., Jason M. Hiveley, Esq., Iverson Reuvers, counsel for Defendants City of Bloomington, Detective Andrew Risdall, and Does 1-10.

James W. Keeler, Jr., Esq., and Sarah C. S. McLaren, Esq., Hennepin County Attorney's Office, counsel for Defendant Hennepin County.

___

**INTRODUCTION**

This matter is before the Court on Defendant Hennepin County's motion to dismiss. (Doc. No. 9.) Plaintiff Kylese Perryman opposes the motion. (Doc. No. 14.) For the reasons set forth below, the Court grants in part and denies in part the motion.

## BACKGROUND

Two years ago, Bloomington Police Department Detective Andrew Risdall began investigating a series of connected crimes. (Doc. No. 1 ("Compl.") ¶ 20.) Two unknown individuals stole a victim's car at gunpoint. (*Id.* ¶ 17.) The next day, the same two individuals robbed a group of women at the Mall of America parking ramp. (*Id.* ¶ 18.) One of the individuals struck a woman with the end of the gun. (*Id.*) The two individuals then went to Walmart and used the stolen credit and debit cards. (*Id.* ¶ 19.) Walmart's security footage captured pictures of the suspects. (*Id.*)

One or more analysts of the Hennepin County CISA Division (Does 11-20) identified Perryman as a suspect. (*Id.* ¶ 64.) Hennepin County initially asserted in a public statement that CISA analysts tried to use facial recognition software to identify a lead, but the photo from the Walmart surveillance video was not high enough resolution.[1] (Doc. No. 17-1 at 3.) Then later that day, a CISA analyst was reviewing booking photographs and "recognized Perryman's booking photograph and saw that it appeared to resemble the suspect from the surveillance footage in the Bloomington case." (*Id.* at 3-4.) At Perryman's expungement hearing, however, Hennepin County "informed the

---

[1] "Though matters outside the pleading may not be considered in deciding a Rule 12 motion to dismiss, documents necessarily embraced by the complaint are not matters outside the pleading." *Enervations, Inc. v. Minn. Min. & Mfg. Co.*, 380 F.3d 1066, 1069 (8th Cir. 2004) (internal quotations omitted). Hennepin County's public statement has been embraced by the Complaint and thus the Court will consider it in deciding Hennepin County's motion to dismiss.

Court that the identification of Mr. Perryman was a result of facial recognition software error and not human error."[2] (Compl. ¶ 112.)

Hennepin County's training manual provides that facial recognition technology is only to be used for investigative purposes and "is **NOT** a method to positively identify an individual." (*Id.* ¶ 117 (emphasis in original).) The Training Manual further requires officers and analysts using facial recognition technology to check facial features to verify a match. (*Id.* ¶ 121.)

Hennepin County provided Detective Risdall with Perryman's name, date of birth, and booking photo. (*Id.* ¶ 110.) Detective Risdall stated that he "viewed booking photos of Perryman, compared them to the Walmart surveillance photo, and positively identified Mr. Perryman as suspect #1 from the MOA robbery." (*Id.* ¶ 25.) Detective Risdall later backtracked and instead asserted that Hennepin County CISA analysts "identified one of the two suspects as Kylese Perryman based on prior law enforcement contacts," including "a May 2021 booking photo." (*Id.* ¶ 90.)

The booking photo noted that Perryman had tattoos on his right forearm. (*Id.* ¶ 27.) In contrast, the robbery suspect did not have tattoos on his forearm, and Detective Risdall "was in possession of photos of the suspect's forearms showing no tattoos." (*Id.* ¶¶ 27-28.) Perryman was also known to be 6'2" and 135-150 pounds, while the suspect was believed to be around 5'9" and 35 pounds heavier than Perryman. (*Id.* ¶ 29.)

---

[2] These documents are under seal and thus are not matters of public record.

Detective Risdall issued a Keeping Our Police Safe ("KOPS") alert, warning law enforcement that Perryman "IS KNOWN TO BE ARMED AND PISTOL WHIPPED A VICTIM DURING THE ROBBERY." (*Id.* ¶¶ 40-41, 45.) A few days later, a state trooper pulled Perryman over for driving with expired tabs. (*Id.* ¶ 48.) Based on the KOPS alert, the trooper contacted the Bloomington Police Department, who then instructed the trooper to bring Perryman to them. (*Id.* ¶¶ 49-50.) Detective Risdall then arrested Perryman for robbery. (*Id.* ¶¶ 52-53.)

Hennepin County filed charges against Perryman. (*Id.* ¶ 64.) Perryman alleges that both Detective Risdall and Hennepin County had exculpatory evidence in their possession, yet Hennepin County did not drop the charges against Perryman until 52 days after his arrest. (*Id.* ¶¶ 92-94.)

Perryman now brings this action against the City of Bloomington, Detective Risdall, Does 1-10, Does 11-20, and Hennepin County. At issue here are Perryman's claims against Hennepin County, which include three claims under 42 U.S.C. § 1983 (false arrest, failure to train, and civil conspiracy), a false arrest claim under Minnesota law, and a violation of Article I, Section 10 of the Minnesota Constitution. Hennepin County moves to dismiss these claims. Perryman opposes the motion.

## DISCUSSION

### I.     Legal Standard

In deciding a motion to dismiss pursuant to Rule 12(b)(6), a court assumes all facts in the complaint to be true and construes all reasonable inferences from those facts in the light most favorable to the complainant. *Morton v. Becker*, 793 F.2d 185, 187 (8th

Cir. 1986). In doing so, however, a court need not accept as true wholly conclusory allegations, *Hanten v. Sch. Dist. of Riverview Gardens*, 183 F.3d 799, 805 (8th Cir. 1999), or legal conclusions drawn by the pleader from the facts alleged, *Westcott v. City of Omaha*, 901 F.2d 1486, 1488 (8th Cir. 1990). A court may consider the complaint, matters of public record, orders, materials embraced by the complaint, and exhibits attached to the complaint in deciding a motion to dismiss under Rule 12(b)(6). *Porous Media Corp. v. Pall Corp.*, 186 F.3d 1077, 1079 (8th Cir. 1999).

To survive a motion to dismiss, a complaint must contain "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Although a complaint need not contain "detailed factual allegations," it must contain facts with enough specificity "to raise a right to relief above the speculative level." *Id.* at 555. As the United States Supreme Court reiterated, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements," will not pass muster under *Twombly*. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 555). In sum, this standard "calls for enough fact[s] to raise a reasonable expectation that discovery will reveal evidence of [the claim]." *Twombly*, 550 U.S. at 556.

## II. False Arrest and Failure to Train Claims

Perryman brings claims against Hennepin County under 42 U.S.C. § 1983 for false arrest and failure to train. A municipality may be held liable under § 1983 if it, "under color of any statute, ordinance, regulation, custom, or usage, of any State . . ., subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any

rights, privileges, or immunities secured by the Constitution and laws." 42 U.S.C. § 1983; *see Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690-91, (1978). Municipal liability exists "only where the municipality itself causes the constitutional violation." *City of Canton v. Harris*, 489 U.S. 378, 385 (1989). Municipalities "are not vicariously liable under § 1983 for their employees' actions." *Connick v. Thompson*, 563 U.S. 51, 60 (2011).

"[L]iability for a constitutional violation attaches only if the violation resulted from an official municipal policy, an unofficial custom, or a deliberately indifferent failure to train or supervise an official or employee." *Tirado v. City of Minneapolis*, 521 F. Supp. 3d 833, 840 (D. Minn. 2021).[3] Perryman argues that all three avenues for municipal liability are sufficiently alleged in his Complaint.

### A. Official Municipal Policy

An official policy is "a deliberate choice of a guiding principle or procedure made by the municipal official who has final authority regarding such matters." *Mettler v. Whitledge*, 165 F.3d 1197, 1204 (8th Cir. 1999). An official policy is "often but not always committed to writing" and is "intended to, and do[es], establish fixed plans of action to be followed under similar circumstances consistently and over time." *Pembaur*, 475 U.S. at 480-81.

---

[3] A municipality may also be held liable under § 1983 for "single decision to take unlawful action made by municipal policymakers," however, Perryman does not allege any action by Hennepin County policymakers. *Pembaur v. City of Cincinnati*, 475 U.S. 469, 483 (1986)

Perryman alleges that the Training Manual for Hennepin County's facial recognition program prohibits the use of facial recognition technology "to positively identify an individual" and requires officers and analysts to independently verify a match. (Compl. ¶¶ 117, 121.) Perryman asserts that Hennepin "breached their own policy by relying on facial recognition software to positively identify Kylese Perryman and ignoring all the known differences between him and the true suspect." (*Id.* ¶ 165.) Because Perryman alleges that a Hennepin County policy *prohibited* the alleged unconstitutional conduct, his Complaint does not establish liability based on that policy. And while Perryman alleges one instance where a Hennepin County employee violated its facial recognition policy, that is not enough to plausibly support the existence of a "fixed plan[] of action" to violate the policy. *See Pembaur*, 475 U.S. at 480-81. Perryman therefore has not sufficiently pled the existence of an unconstitutional official policy.

**B.     Custom**

Perryman next asserts that the CISA analyst, or analysts, relied on facial recognition software to improperly identify Perryman based on an unofficial custom. A custom is a "practice [that] is so widespread as to have the force of law." *Bd. of Cnty. Comm'rs of Bryan Cnty. v. Brown*, 520 U.S. 397, 404 (1997). "The Eighth Circuit has not directly addressed the quantum of 'continuing, widespread, persistent' conduct a plaintiff must allege to satisfy the *Iqbal* standard," however, "it has held that isolated incidents do not suffice." *Ball-Bey v. Chandler*, 415 F. Supp. 3d 884, 895 (E.D. Mo. 2019) (citing cases).

Perryman relies on his arrest—a single isolated incident—to support the existence of a custom. Even at the motion to dismiss stage, this is not enough to plausibly allege an unconstitutional custom. *See Quinn v. Doherty*, 637 F. Supp. 3d 647, 667 (D. Minn. 2022) ("But Plaintiffs' specific allegations relate only to Plaintiffs' experience. This isolated event does not establish a custom."); *Yang v. City of Minneapolis*, 607 F. Supp. 3d 880, 898 (D. Minn. 2022) ("Alleging a single instance of misconduct is not sufficient to support an inference of a custom or unofficial policy of the City."); *Doe ex rel. Doe v. Sch. Dist. of City of Norfolk*, 340 F.3d 605, 615 (8th Cir. 2003) ("The failure to disclaim one single religious exercise surely does not support the existence of a custom or policy.").

Perryman relies on *Tirado*, but that case is distinguishable from the case at hand.[4] While the court in *Tirado* emphasized that a plaintiff is not required to "identify the full scope of an alleged custom" at the motion to dismiss stage, it also acknowledged that "an unconstitutional custom claim cannot be predicated on a single act." 521 F. Supp. 3d at 841-42 (internal quotations and citation omitted). In *Tirado*, the plaintiff identified "ten or so incidents" as evidence of a custom. *Id.* at 841. Because Perryman relies on a single incident, he has not plausibly alleged an unconstitutional custom.

---

[4] At the motion hearing, Perryman also relied on *Shqeirat v. U.S. Airways Grp., Inc.*, 515 F. Supp. 2d 984, 995 (D. Minn. 2007). The case is distinguishable because the defendant in that case arrested six passengers, and the court concluded that the six arrests could "support the existence of an unconstitutional MAC policy of arresting passengers when an airline reports allegedly suspicious behavior falling short of probable cause." *Id.* In contrast, this case involves only the arrest of Perryman, and as noted above, a single incident is not sufficient evidence of a custom.

### C. Failure to Train

Perryman additionally asserts that Hennepin County failed to properly train its employees about the use of facial recognition software and this failure resulted in a violation of Perryman's constitutional rights. Inadequate training "may serve as the basis for § 1983 liability only where the failure to train amounts to deliberate indifference to the rights of persons with whom the police come into contact." *City of Canton*, 489 U.S. at 388. "Policymakers' continued adherence to an approach that they know or should know has failed to prevent tortious conduct by employees may establish" deliberate indifference. *Connick*, 563 U.S. at 62 (internal quotations and citation omitted). But "[w]ithout notice that a course of training is deficient in a particular respect, decisionmakers can hardly be said to have deliberately chosen a training program that will cause violations of constitutional rights." *Id.*

As noted above, Perryman has alleged only a single incident in which Hennepin County CISA analysts allegedly violated Hennepin County's facial recognition policy. This single incident is not enough to establish a pattern of similar violations, and no facts in the Complaint support the conclusion that Hennepin County had notice that its course of training was deficient.

The Supreme Court has "left open the possibility that, in a narrow range of circumstances, a pattern of similar violations might not be necessary to show deliberate indifference." *Id.* at 63 (internal quotations and citation omitted). In those rare situations, "the unconstitutional consequences of failing to train could be so patently obvious that a city could be liable under § 1983 without proof of a pre-existing pattern of

violations." *Id.* at 64. For example, if a city arms its police with firearms and sends them out into the community "without training the officers in the constitutional limitation on the use of deadly force," such decision could constitute deliberate indifference given the high probability of violations of constitutional rights. *Id.* at 63.

This situation is unlike the above hypothetical. In this case, Perryman asserts that more training about the facial recognition software was necessary, but he does not dispute that Hennepin County's Training Manual, unlike the hypothetical, contained specific directions about the use of the facial recognition technology. Additionally, while armed police officers "must sometimes make split-second decisions with life-or-death consequences" and thus clearly require specific training on how to approach those situations, *id.* at 64, here the Training Manual prohibits the use of facial recognition technology "to positively identify an individual" in all situations, leaving no room for discretion. (Compl. ¶ 117.) This is not a situation where Hennepin County provided no guidance to its employees or where the need for further training was "so patently obvious." *Connick*, 563 U.S. at 64; *see Bah v. Apple Inc.*, No. 19-cv-3539, 2021 WL 4084500, at *12 (S.D.N.Y. Sept. 8, 2021) ("[T]he Complaint fails to allege a history or pattern of officers ignoring the NYPD's facial recognition protocol when search results identify more than one individual; it merely alleges a single instance of [the defendant] not following the policy.").

The Court concludes that Perryman has failed to sufficiently plead a *Monell* claim against Hennepin County, and these claims are therefore dismissed.

### III. Civil Conspiracy Claim

Perryman also brings a claim against Hennepin County asserting a civil conspiracy under § 1983. To prove a § 1983 conspiracy claim, a plaintiff must show the following: "that the defendant conspired with others to deprive him or her of a constitutional right; that at least one of the alleged co-conspirators engaged in an overt act in furtherance of the conspiracy; and that the overt act injured the plaintiff." *Askew v. Millerd*, 191 F.3d 953, 957 (8th Cir. 1999). The plaintiff "is additionally required to prove a deprivation of a constitutional right or privilege." *Id.* Because Perryman alleges that a municipality participated in the conspiracy, he must show that the municipal entity itself was involved in the conspiracy. Perryman cannot rely on a theory of respondeat superior. *Monell*, 436 U.S. at 691 ("[A] municipality cannot be held liable under § 1983 on a *respondeat superior* theory.").

Perryman argues that because he has brought the civil conspiracy claim directly against Hennepin County, the claim is "separate and distinct from [a] *Monell* claim[]." (Doc. No. 14 at 13 n.3.) This argument misses the mark. "[I]n enacting § 1983, Congress did not intend to impose liability on a municipality unless *deliberate* action attributable to the municipality itself is the 'moving force' behind the plaintiff's deprivation of federal rights." *Bd. of Cnty. Comm'rs of Bryan Cnty.*, 520 U.S. at 400 (emphasis in original). This applies to all claims under § 1983, including civil conspiracy.

Perryman relies on the actions of Hennepin County employees to establish the conspiracy. Namely, Perryman asserts that a Hennepin County CISA analyst, or analysts,

11

conspired with the other Defendants by "utiliz[ing] facial recognition software to misidentify Kylese Perryman" and "agree[ing] to change the narrative over time as to who was responsible for the incorrect identification of Kylese Perryman." (Compl. ¶¶ 174, 178.)  But a municipal entity cannot be sued under § 1983 "for an injury inflicted solely by its employees or agents.  Instead, it is when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983."  *Monell*, 436 U.S. at 694.

For Hennepin County to be liable for civil conspiracy under § 1983, Perryman must show that Hennepin County itself participated in the conspiracy either through a policy, custom, or action by persons with final decision-making authority.[5]  *See Rieves v. Town of Smyrna*, 67 F.4th 856, 866 (6th Cir. 2023) ("[N]o case law exists to suggest that the standard for *Monell* liability in the conspiracy context differs from the general standard."); *Ghiles v. City of Chicago Heights*, No. 12-cv-7634, 2016 WL 561897, at *3 (N.D. Ill. Feb. 12, 2016) (dismissing conspiracy claims under § 1983 because a municipality can only be liable "through an express policy causing a constitutional deprivation, a wide-spread practice constituting a custom or usage with the force of law, or an allegation that the constitutional injury was caused by a person with final

---

[5]  Perryman asserts that Hennepin County has waived this issue because it did not separately address civil conspiracy and instead relied solely on *Monell*. (Doc. No. 23 at 1 n.1.)  Because *Monell* applies to all municipal liability claims under Section 1983, including civil conspiracy, Hennepin County has not waived the issue.

policymaking authority."); *Fulton v. Felder*, No. 05-cv-3652, 2007 WL 2213096, at *4 (S.D.N.Y. Aug. 2, 2007) ("[W]here a government entity is one alleged conspirator, a plaintiff must demonstrate that imposition of liability under *Monell* is proper in order to have a successful claim for civil conspiracy.").

As noted above, Perryman has not alleged the existence of any unconstitutional policy or custom. Nor has Perryman alleged any action by persons with policymaking authority. It is not enough to allege that a Hennepin County employee, or employees, conspired with other state actors to deprive Perryman of his constitutional rights. Perryman must allege facts which would support the conclusion that Hennepin County itself was involved in the conspiracy. *See Berry v. Hennepin Cnty.*, No. 20-cv-2189, 2023 WL 3244827, at *6 (D. Minn. May 4, 2023) (concluding that the plaintiffs' conspiracy claim was not futile under *Monell* because the plaintiffs alleged facts demonstrating that the "municipal entities themselves were involved in a civil conspiracy to deprive [the plaintiffs] of their constitutional rights"). He has not done so here.

Perryman cites several cases to support his assertion that *Monell* does not apply to conspiracy claims under § 1983. These cases do not support that conclusion. For example, in *Tirado*, a private actor "initiated contact with senior MPD policymakers to make demands" and "proposed an action plan to which the City agreed." 521 F. Supp. 3d at 845. Thus, the alleged conspiracy involved both an official policy (an action plan) and action by persons with final decision-making authority (senior MPD policymakers). Similarly, in *Goyette v. City of Minneapolis*, No. 20-cv-1302, 2021 WL 3222495, at *10 (D. Minn. July 29, 2021), the plaintiffs alleged that the Minneapolis Police Department,

13

Minnesota State Patrol, and other agencies created a "unified center of communications" and "reached an agreement as to how they would respond to the protests." The alleged conspiracy therefore involved unconstitutional policies and customs of multiple municipal entities, as well as action by persons with final decision-making authority. In contrast, Perryman's conspiracy claim relies on the conduct of one or more Hennepin County CISA analysts with no alleged policymaking authority. Moreover, Perryman has failed to sufficiently allege that these analysts were acting based on an unconstitutional policy or custom.

Because Perryman has not alleged a civil conspiracy involving Hennepin County, the Court dismisses this claim.

**IV.    False Arrest Tort Claim**

Perryman additionally alleges that Hennepin County caused Perryman to be unlawfully arrested. Under Minnesota law, a defendant may be liable for a false arrest if the plaintiff can prove that (1) defendant performed an arrest and (2) the arrest was unlawful. *Lundeen v. Renteria*, 224 N.W.2d 132, 146 (Minn. 1974). Hennepin County argues that this claim should be dismissed because Hennepin County did not arrest Perryman. In addition, Hennepin County asserts that it is entitled to vicarious immunity.

Perryman has alleged that his arrest was unlawful, as he asserts that Detective Risdall ignored "evidence in [his] possession [that] showed that Mr. Perryman could not have been one of the Mall of America robbers" and did not have probable cause to arrest him. (Compl. ¶¶ 52-54, 154.) The remaining issue then is whether Hennepin County participated in Perryman's arrest. "All those who, by direct act or indirect procurement,

14

personally participate in or proximately cause the false imprisonment or unlawful detention, are joint tort-feasors." *Anderson v. Averbeck*, 248 N.W. 719, 720 (Minn. 1933).  "[A] plaintiff [must] show that a defendant 'instigated' the plaintiff's imprisonment."  *Yang v. Klass*, 776 F. Supp. 2d 916, 925 (D. Minn. 2011).

Perryman asserts that Hennepin County "has been deliberately vague as to how Mr. Perryman was identified . . . and how the events surrounding the identification led to [his] arrest."  (Doc. No. 14 at 34.)  In the Complaint, Perryman alleges that Detective Risdall initially took credit for the identification and stated that he "viewed booking photos of Perryman, compared them to the Walmart surveillance photo, and positively identified Mr. Perryman as suspect #1 from the MOA robbery."  (Compl. ¶ 25.)  In a separate statement, Detective Risdall walked back his initial statement and instead indicated that it was a Hennepin County CISA analyst who "identified one of the two suspects as Kylese Perryman."  (*Id.* ¶ 90.)  Perryman further alleges that during the expungement process, Hennepin County "informed the Court that the identification of Mr. Perryman was a result of facial recognition software error and not human error."  (*Id.* ¶ 112.)  And Perryman alleges that Hennepin County, not Detective Risdall, used the facial recognition software.  (*Id.* ¶ 115.)

The Court agrees with Perryman that at this stage of the proceedings it is unclear who exactly came to the conclusion that Perryman was one of the robbers.  While Detective Risdall ultimately ordered the arrest of Perryman, it is plausible on these facts that Hennepin County identified Perryman as the robbery suspect and thus instigated, or proximately caused, Perryman's arrest.

Hennepin County further asserts that it is entitled to vicarious immunity on this claim because the CISA analysts are protected by official immunity.

"[U]nder Minnesota law[,] a public official is entitled to official immunity from state law claims when that official is charged by law with duties that require the exercise of judgment or discretion." *Johnson v. Morris*, 453 N.W.2d 31, 41 (Minn. 1990). "Discretionary duties require the use of professional judgment to choose between a variety of options under uncertain circumstances and without the benefit of time for reflection." *Yang*, 607 F. Supp. 3d at 899 (internal quotations and citation omitted). "In contrast, ministerial duties are absolute and certain, and involve executing a specific duty arising from fixed and designated facts." *Id.* (internal quotations and citation omitted).

In this case, Hennepin County policy prohibits the use of facial recognition technology "to positively identify an individual" in all situations. (Compl. ¶ 117.) In other words, the policy applies "without regard" to an analyst's "own judgment or opinion." *Porter v. Williams*, 436 F.3d 917, 922 (8th Cir. 2006). Thus, to the extent that Perryman alleges that Hennepin County analysts violated this policy by using facial recognition to positively identify Perryman, Perryman has alleged a ministerial act, not discretionary.[6] At this stage of the proceedings, Perryman has sufficiently alleged that

---

[6] If, however, discovery reveals that Hennepin County analysts did not rely solely on facial recognition technology and instead independently verified the match or did not use facial recognition software at all, then such action would be considered discretionary, and Perryman would have to prove that the analysts acted with malice. *See Yang*, 607 F. Supp. 3d at 899 ("When a public official's conduct is discretionary, the conduct is not immune from liability if the official 'is guilty of a willful or malicious wrong.'"). But such issue is reserved for a later time.

the Hennepin County prohibited the use of facial recognition technology to positively identify an individual—a ministerial duty—and a Hennepin County analyst, or analysts, did not follow that policy. *See Anderson v. Anoka Hennepin Indep. Sch. Dist.*, 678 N.W.2d 651, 660 (Minn. 2004) ("The ministerial-conduct bar to official immunity arises when the allegation is that a ministerial duty was either not performed or was performed negligently."). Thus, Hennepin County is not shielded, at least at this time, by vicarious immunity.

V.   **Minnesota Constitution Claim**

Lastly, Perryman asserts a claim against Hennepin County under Article I, Section 10 of the Minnesota Constitution. "Minnesota has no statutory scheme that creates a private right of action for violations of the Minnesota Constitution." *Porter v. Hennepin Cnty.*, No. 06-cv-3142, 2008 WL 2202961, at *6 (D. Minn. May 23, 2008). For that reason, "courts have repeatedly stated that Minnesota has not recognized private remedies for violations of the Minnesota Constitution." *Id.* (internal quotations and citation omitted).

Perryman argues that while he cannot seek monetary damages for a violation of Article I, Section 10, he can seek injunctive relief. "[A]ny remedy potentially available to [a] plaintiff for an alleged violation of his rights under the Minnesota Constitution is co-extensive with that available to him under Section 1983 for a violation of the Fourth Amendment." *Thomsen v. Ross*, 368 F. Supp. 2d 961, 976 (D. Minn. 2005). In *R.S. ex rel. S.S. v. Minnewaska Area School District No. 2149*, the court allowed a claim under the Minnesota Constitution to proceed past the motion to dismiss stage, but the court left

17

open the question of whether the plaintiff could ultimately seek relief under the Minnesota Constitution.  894 F. Supp. 2d 1128, 1146 (D. Minn. 2012).  Instead, the court noted that the plaintiff had plausibly alleged a claim under § 1983 and concluded that "any relief available under the Minnesota Constitution is likely to be coextensive with the relief available under § 1983."  *Id.*  Perryman, in contrast, has not plausibly alleged a § 1983 claim against Hennepin County.  Nor has Perryman provided any case in which a federal court has granted injunctive relief based solely on claim by a private party under Article I, Section 10 of the Minnesota Constitution.

Perryman's claim against Hennepin County under the Minnesota Constitution is dismissed.

**VI.   Request to Amend**

Perryman requests the opportunity to amend his complaint.  With the court's leave, a party may amend his pleading "when justice so requires."  Fed. R. Civ. P. 15(a)(2).  A motion to amend should comply with Local Rule 15.1 which requires "a copy of the proposed amended pleading."  While "[t]he failure to file a formal motion to amend a complaint is not necessarily fatal[,] . . . parties should not be allowed to amend their complaint without showing how the complaint could be amended to save the meritless claim."  *GWG DLP Funding V, LLC v. PHL Variable Ins. Co.*, 54 F.4th 1029, 1036 (8th Cir. 2022) (internal quotations and citation omitted).  Because Perryman has not adequately shown how his claims could "be amended to save the meritless claim[s]," the Court denies Perryman's request to amend.  The Court dismisses Perryman's claims under § 1983 and the Minnesota Constitution with prejudice.

## CONCLUSION

For the reasons outlined above, the Court dismisses with prejudice Perryman's § 1983 claims (Counts I, III, IV) and claim under the Minnesota Constitution (Count VIII). Perryman's false arrest claim (Count VI) against Hennepin County survives the motion to dismiss.

## ORDER

Based upon the foregoing, and the files, records, and proceedings herein, **IT IS HEREBY ORDERED** that:

1. Defendant Hennepin County's motion to dismiss (Doc. No. [9]) is **GRANTED IN PART** and **DENIED IN PART** as follows:

    a. The Court **GRANTS** Hennepin County's motion to dismiss Perryman's § 1983 claims and claim under the Minnesota Constitution (Counts I, III, IV, VIII) against Hennepin County.

    b. The Court **DENIES** Hennepin County's motion to dismiss Perryman's False Arrest tort claim against Hennepin County (Count VI).

2. Perryman's § 1983 claims (Counts I, III, IV) and Minnesota Constitution claim (Count VIII) against Hennepin County **ARE DISMISSED WITH PREJUDICE.**

Dated:  December 4, 2023                    s/Donovan W. Frank
                                            DONOVAN W. FRANK
                                            United States District Judge