## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

Kylese Perryman,                                    Civil No. 23-1984 (DWF/DTS)

              Plaintiff,

v.

                                **MEMORANDUM**
City of Bloomington; Does 1-10,          **OPINION AND ORDER**
*individuals that are employees or agents of
the Bloomington Police Department*;
Detective Andrew Risdall; Does 11-20,
*individuals that are employees or agents of
Hennepin County*,

              Defendants.

## INTRODUCTION

This matter is before the Court on cross motions for summary judgment.
Defendants Detective Andrew Risdall, the City of Bloomington ("Bloomington"),
Does 1-10, and Does 11-20 (collectively, "Defendants") move for summary judgment on
all counts. (Doc. No. 43.) Plaintiff Kylese Perryman opposes Defendants' motion.
(Doc. No. 54.) Perryman moves for partial summary judgment against Defendants
Risdall and Bloomington on Counts I and II. (Doc. No. 49.) Defendants oppose
Perryman's motion. (Doc. No. 56.) For the reasons set forth below, the Court grants in
part and denies in part Defendants' motion, and denies Perryman's motion.

## BACKGROUND

Kylese Perryman was incorrectly identified by police and arrested for crimes he
did not commit.

On September 4, 2021, two teenagers (the "Suspects") committed an aggravated robbery in a Mall of America parking ramp. (Doc. No. 55-2 at 5-6.) Suspect 1 hit a victim over the head with a gun and took her backpack. (*Id.* at 6.) The victim described Suspect 1 as a Black male in his early twenties with shoulder-length dreadlocks, wearing a black shirt, denim jeans, and a medical face mask. (*Id.*) Suspect 2 pointed a gun at another victim, so she gave him her backpack. (*Id.*) This victim described Suspect 2 as a Black male in his early twenties with dreadlocks, wearing a black shirt and a medical face mask. (*Id.* at 7.) When leaving the scene, Automated License Plate Readers at the exit alerted that the car was one which had been stolen the day before. (*Id.* at 5.) Surveillance footage captured this incident, but the footage is blurry and no faces are easily identifiable. (*See* Doc. No. 47-2.)

One of the victims reported that her stolen debit card was used at a Brooklyn Center Walmart shortly after the robbery. (Doc. No. 55-2 at 8.) The investigating officer, Detective Andrew Risdall, alerted an asset protection employee at the store, who then gave Risdall the surveillance footage.[1] (*Id.*) The footage[2] portrays both Suspects

---

[1] There is extensive disagreement among the parties as to whether Risdall watched the Walmart surveillance footage, either upon receipt or when identifying Perryman. In cross motions for summary judgment, a Court must view evidence in the light most favorable to the nonmoving party. *See Dunn v. Assocs. in Psychiatry & Psych., P.A.*, No. 22-cv-615, 2024 WL 1698033, at *4 (D. Minn. Mar. 27, 2024). The Court therefore assumes that Risdall did not watch the footage when considering Defendants' motion and assumes that Risdall did watch the footage when considering Perryman's motion. Further, as explained more fully below, this factual dispute does not change the Court's decision.

completing transactions at a self-checkout and exiting the store. (*See* Doc. No. 62.) The self-checkout footage included multiple views of Suspect 1's right forearm and no tattoo is visible. (*Id.*; *see also* Doc. No. 47-3 at 32.) The exit footage showed that when the two Suspects were leaving, Suspect 1 had his face mask pulled down so that it only covered his chin. (*See* Doc. No. 47-5.)

Risdall disseminated a still photo of the Suspects leaving Walmart to Bloomington Police Department Crime Analyst Rachel Storlie to see if she could help identify the Suspects. (Doc. No. 47-6 at 3.) Storlie then emailed the photo to Hennepin County Sheriff's Office ("HCSO") asking them to try facial recognition software. (*Id.*; *see* Doc. No. 55-4 at 77.) The facial recognition technology did not find a match, but HCSO Criminal Information Sharing and Analysis ("CISA") Analyst Nicole Hughes noticed resemblance between Suspect 1 and a booking photo of Kylese Perryman from a prior arrest. (Doc. No. 47-7 at 2-3.) Hughes then emailed Storlie that it was Perryman, including the booking photo, and Storlie forwarded that information to Risdall. (*Id.* at 3, 5.) Neither Storlie nor Hughes positively identified Perryman; and both relied on Risdall as the detective to identify the Suspect. (*Id.* at 3; Doc. No. 55-4 at 83.)

Upon receipt of Storlie's email, Risdall compared the booking photo to the still photo from the Walmart surveillance footage for two to three minutes. (Doc. No. 47-3 at 13, 17.) Risdall also accessed the Minnesota Repository of Arrest Photographs

---

[2]   The Court has independently viewed the footage and relies on it throughout this Opinion. Because neither party disputes the accuracy of the footage, the Court views the facts as depicted in the videos. *Ransom v. Grisafe*, 790 F.3d 804, 807 (8th Cir. 2015).

("MRAP") to review information on Perryman.  (*Id.* at 14-15.)  Perryman's MRAP profile listed tattoos, but there were no photos of those tattoos.  (*Id.*)  Based on that review, Risdall incorrectly identified Perryman as Suspect 1.  (Doc. No. 55-2 at 10.)

Risdall then put out a "Keep Our Police Safe" ("KOPS") alert on Perryman.  (Doc. No. 47-8.)  KOPS is a statewide alert system designed to provide law enforcement with information on potential threats to officer safety.  (Doc. No. 47-13 at 4, 6.)  Certain KOPS alerts include a "pick up and hold" designation.  (Doc. No. 47-13 at 10.)  The "pick up and hold" KOPS alerts convey that there is probable cause to pick up and hold that individual.  (*Id.*)  Believing that Perryman had committed the aggravated robbery and that he was armed and dangerous, Risdall issued a "pick up and hold" KOPS alert.  (Doc. No. 47-3 at 18, 32.)

On September 25, 2021, a Minnesota State Patrol trooper pulled Perryman over for a traffic violation.  (Doc. No. 47-9 at 3.)  The trooper saw the KOPS alert issued by Risdall and reached out to the Bloomington Police Department to confirm whether the information was still reliable.  (*See* Doc. No. 47-3 at 21.)  Risdall told the dispatcher, who then told the trooper, that the alert was still valid.  (*Id.*)  Based on the "pick up and hold" designation, Perryman was arrested and booked at the Bloomington Police Department. (Doc. No. 47-10 at 3.)  Perryman spent the weekend in jail.  (Doc. No. 47-9 at 6.)

On September 28, 2021, Hennepin County Attorney's Office ("HCAO") filed a criminal complaint against Perryman.  (Doc. No. 47-11.)  The complaint stated that there was probable cause to believe that Perryman committed aggravated robbery in the first degree, the crime committed at the Mall of America.  (*Id.* at 2.)

Throughout October 2021, Perryman's attorney sent proof that he was not Suspect 1 to Risdall and HCAO.  (Doc. No. 47-3 at 25, 32.)  That proof included photos of Perryman's forearm tattoos, a photo of Perryman at a family gathering on the day of the mall robbery, and a screenshot of Perryman's timecard listing him working during the car theft.  (*See* Doc. No. 46-5; Doc. No. 46-8.)  All information that Risdall received he sent on to HCAO.  (Doc. No. 46-5.)  On November 16, 2021, HCAO dismissed the criminal complaint against Perryman.  (Doc. No. 47-12 at 3.)

Perryman subsequently filed the current action.  (Doc. No. 1 ("Compl.").)  Perryman alleges multiple violations of 42 U.S.C. § 1983:  false arrest (Count I), false imprisonment (Count II), *Monell*[3] liability (Count III),[4] civil conspiracy (Count IV),[5] and violation of the Particularity Clause of the Fourth Amendment (Count V).  (*Id.* ¶¶ 127-91.)  Perryman also alleges violations of state tort law for false arrest and false imprisonment (Counts VI and VII).  (*Id.* ¶¶ 192-219.)  Lastly, Perryman alleges unreasonable search and seizure in violation of the Minnesota Constitution (Count VIII).

---

[3]    Monell v. Dep't of Soc. Servs., 436 U.S. 658 (1978).

[4]    This count is labeled "42 U.S.C. § 1983 Monell Claim – Failure to Train and Supervise." (Compl. at 22.)  However, the substance of the complaint alleges that constitutional violations resulted from official policy, unofficial custom, or failure to train. (*Id.* ¶¶ 161-62, 166.)  Further, Perryman's arguments during motion practice only address unofficial custom. (Doc. No. 51 at 21-31; Doc. No. 54 at 22-26.)  Because Perryman failed to defend the official policy or failure to train theories, the Court will only consider the unofficial custom theory.

[5]    Perryman volunteers that his civil conspiracy claim is moot due to a settlement agreement. (Doc. No. 54 at 7 n.1.)  The Court therefore dismisses Count IV with prejudice.

(*Id.* ¶¶ 220-27.)  Defendants move for summary judgment as to all counts.  (Doc. No. 43.)

Perryman moves for summary judgment as to his federal law claims of false arrest and

false imprisonment (Counts I and II).  (*See* Doc. No. 51 at 5.)

## DISCUSSION

## I.    **Legal Standard**

Summary judgment is proper if the moving party shows that there are no genuine

issues of material fact and that they are entitled to judgment as a matter of law.  Fed. R.

Civ. P. 56(a); *Enter. Bank v. Magna Bank of Mo.*, 92 F.3d 743, 747 (8th Cir. 1996).  A

party opposing a properly supported motion for summary judgment must demonstrate the

existence of specific facts in the record that create a genuine issue for trial.  *Krenik v.*

*County of Le Sueur*, 47 F.3d 953, 957 (8th Cir. 1995).  The nonmoving party "may not

rest upon mere allegation or denials of his pleading, but must set forth specific facts

showing that there is a genuine issue for trial."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S.

242, 256 (1986).

"[A] genuine issue of material fact exists if:  (1) there is a dispute of fact; (2) the

disputed fact is material to the outcome of the case; and (3) the dispute is genuine, that is,

a reasonable jury could return a verdict for either party."  *RSBI Aerospace, Inc. v.*

*Affiliated FM Ins. Co.*, 49 F.3d 399, 401 (8th Cir. 1995).  The Court must view the

evidence and the inferences that may be reasonably drawn from the evidence in the light

most favorable to the nonmoving party.  *Weitz Co. v. Lloyd's of London*, 574 F.3d 885,

892 (8th Cir. 2009).  When, as here, there are cross motions for summary judgment, the

Court's approach is modified to view the facts separately for each party's motion.

"When considering a plaintiff's motion, the Court views the record in the light most favorable to the defendant.  When considering a defendant's motion, the Court views the record in the light most favorable to the plaintiff."  *Dunn*, 2024 WL 1698033, at *4 (citation omitted) (citing *Fjelstad v. State Farm Ins. Co.*, 845 F. Supp. 2d 981, 984 (D. Minn. 2012)).

## II.    Unidentified Defendants

As a preliminary matter, the Court grants summary judgment in favor of the unidentified defendants, Does 1-10 and Does 11-20, as to all claims against them. Dismissal of claims is proper when a defendant's true identity cannot be ascertained even after discovery.  *See Munz v. Parr*, 758 F.2d 1254, 1257 (8th Cir. 1985).  Does 1-10 are described only as "individuals that are employees or apparent employees of the City of Bloomington, specifically working in the Bloomington Police Department"; Does 11-20 are described only as "individuals that are employees or apparent employees of Hennepin County, specifically working in the Hennepin County Sheriff's Office CISA division." (Compl. ¶¶ 13-14.)  No further details have arisen through discovery.  Both parties agree that dismissal is proper here.  (*See* Doc. No. 54 at 7 n.1.)  The Court therefore terminates Does 1-10 and Does 11-20 as parties to this case.

### III.    Counts I and II:  False Arrest and False Imprisonment[6]

### A.    Defendant Risdall

Perryman alleges that Risdall violated his Fourth Amendment rights because he ignored exculpatory evidence and arrested Perryman without probable cause.  (Doc. No. 51 at 14-19.)  Risdall moves for summary judgment on these counts by invoking qualified immunity.  (Doc. No. 56 at 16-17.)  Perryman moves for summary judgment on these counts, arguing that his arrest was unreasonable and Risdall is not entitled to qualified immunity.  (Doc. No. 51 at 14-21.)  The Court finds that there is a genuine dispute as to whether Risdall's conduct was reasonable, and therefore neither party is entitled to summary judgment.

The doctrine of qualified immunity protects state actors from civil liability for their discretionary acts when "their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."  *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).  Qualified immunity "provides ample protection to all but the plainly incompetent or those who knowingly violate the law."  *Malley v. Briggs*, 475 U.S. 335, 341 (1986).  To overcome qualified immunity on summary judgment, a plaintiff must show:  "(1) the facts, viewed in the light most favorable to the plaintiff, demonstrate the deprivation of a constitutional or statutory right; and (2) the right was clearly established at the time of the deprivation."  *Howard v. Kan. City Police*

---

[6]    The parties argue that allegations of false arrest and false imprisonment should be addressed together.  (Doc. No. 45 at 21; Doc. No. 54 at 12 n.3.)  The Court agrees.  *See Wallace v. Kato*, 549 U.S. 384, 388-89 (2007).

*Dep't*, 570 F.3d 984, 988 (8th Cir. 2009).  The Court has discretion to decide which

prong to consider first.  *Pearson v. Callahan*, 555 U.S. 223, 236 (2009).

A right is clearly established when there is "a sufficiently clear foundation in then-

existing precedent." *District of Columbia v. Wesby*, 583 U.S. 48, 63 (2018).  A clear

foundation means that the law must be sufficiently clear such that every reasonable

officer would understand that their conduct violates that right.  *Id.*  To make such a

showing, a plaintiff may identify "existing circuit precedent that squarely governs the

official's conduct, a robust consensus of persuasive authority on the issue, or a general

constitutional rule that applies with obvious clarity to the facts at issue." *Webster v. St.

Louis County*, 135 F.4th 614, 617 (8th Cir. 2025).  Courts must define clearly established

law with a high level of specificity, not generally.  *Wesby*, 583 U.S. at 63-64.

It is clearly established that an investigation which leads to an arrest must be

reasonable.  *E.g.*, *Bell v. Neukirch*, 979 F.3d 594, 608 (8th Cir. 2020).  Law enforcement

is given "'substantial latitude in interpreting and drawing inferences from factual

circumstances,' but such latitude is not without limits." *Kuehl v. Burtis*, 173 F.3d 646,

650 (8th Cir. 1999) (citation omitted) (quoting *United States v. Washington*, 109 F.3d

459, 465 (8th Cir. 1997)).  "An officer contemplating an arrest is not free to disregard

plainly exculpatory evidence, even if substantial inculpatory evidence (standing by itself)

suggests that probable cause exists." *Id.*  And if "minimal further investigation would

have exonerated the suspect," there is no probable cause to arrest them.  *Id.* (citation

modified).

The Court finds a genuine dispute of material fact as to whether Risdall's investigation was reasonable. For example, the reasonableness of Risdall's failure to compare scars, marks, and tattoos ("SMTs") is debatable. A jury could find that Risdall's investigation was unreasonable because he did not check for Perryman's tattoos despite the fact that it is generally accepted practice for an officer to assess and compare SMTs when identifying a suspect. (*See* Doc. No. 47-15 at 15-16.) Similarly, a jury could find that it was unreasonable to not access the written descriptions of Perryman's tattoos in MRAP, which Risdall had access to. Defendants' own expert acknowledged that even in the absence of a photo, written descriptions of a tattoo should be considered. (*Id.* at 16.) On the other hand, a jury could find that it was reasonable for Risdall to not check for SMTs because no SMTs were part of the suspect descriptions given by witnesses nor visible on the Walmart surveillance video, so Risdall did not think SMTs were important. This dispute is material.

As another example, there is a genuine dispute of material fact as to whether Risdall watched the surveillance video and, if he did, how closely.[7] A jury's factual findings on these questions could impact its answer to the ultimate question, whether Risdall's investigation was reasonable. If the jury finds that Risdall did not review the video whatsoever, it could find that relying only on the photos instead of going back to

---

[7]     As noted, there is extensive disagreement as to whether Risdall watched the surveillance video when making the identification. (*See supra* note 1.) However, the Court's decision would not change if this dispute were not present because the dispute as to the reasonableness of investigation as it pertains to the SMTs is sufficient to deny both motions.

the video was unreasonable, especially considering that Suspect 1's face was partially covered by a mask in the still photos, which made identification more difficult. (*See* Doc. No. 47-15 at 17.) Alternatively, if the jury found that Risdall reviewed the video closely,[8] it could find that his investigation was reasonable when considering this fact along with the other facts of the investigation.

In conclusion, the evidence is not such that a reasonable jury could only decide one way on the reasonableness of Risdall's investigation, so neither party has met their burden. Risdall is not entitled to qualified immunity for his investigation and Perryman is not entitled to summary judgment on Counts I and II. The Court denies both motions for summary judgment as to the claims against Risdall for false arrest and false imprisonment.

### B.    Defendant Bloomington

Perryman's allegations of false arrest and false imprisonment also apply to Defendant Bloomington. However, Perryman makes no *Monell* arguments as to Bloomington's liability for the reasonableness of Risdall's investigation; all arguments are as to the use of KOPS alerts. The Court therefore grants summary judgment in favor of Bloomington as to the claims of false arrest and false imprisonment, and denies Perryman's motion as to these claims.

---

[8]    Simply watching a video does not necessarily mean the investigation was reasonable; an officer must still review a video closely. *See Bell*, 979 F.3d at 609 ("Simply scanning a video does not make conduct objectively reasonable if an officer ignores or overlooks plainly exculpatory evidence.").

IV.    **Counts III and V:  Particularity Clause**[9]

Perryman next challenges Bloomington and Risdall's use of the KOPS alert

system.  Perryman argues that the ability to issue a KOPS alert with a "pick up and hold"

designation amounts to causing arrests without proper establishment of probable cause.

Defendants contend that suspects are only arrested based on a KOPS alert with a "pick up

and hold" designation if there is verification by the arresting officer that the alert is still

valid.  (Doc. No. 45 at 14.)  For the reasons discussed below, the Court finds that it is a

violation of an arrestee's rights to be arrested based on a KOPS alert, even if the arresting

officer verifies the alert, if the arresting officer was not part of the investigation.

A.    **Defendant Risdall**

Perryman alleges that Risdall violated his rights under the Particularity Clause of

the Fourth Amendment by using the KOPS alert as an arrest warrant.  (Doc. No. 54 at 19-

21.)  Risdall again invokes qualified immunity.  (Doc. No. 45 at 23.)  The Court finds that

Perryman's constitutional rights were violated but that Risdall is entitled to qualified

immunity because it was not clearly established that he could not issue a KOPS alert.

It is clearly established that KOPS alerts are not arrest warrants and do not give

probable cause to arrest.[10]  *See Voss v. Feine*, No. 08-cv-6484, 2010 WL 4780678, at *7

---

[9]    Perryman's arguments as to Defendant Risdall comprise Count V.  Perryman's arguments as to Defendant Bloomington comprise Count III.

[10]    Neither party disputes this.  (Doc. No. 45 at 23; Doc. No. 54 at 19.)  The fact that KOPS alerts do not give probable cause was confirmed by Defendants' expert and Defendants themselves.  (Doc. No. 47-15 at 26; Doc. No. 47-13 at 13; Doc. No. 47-3 at 18.)

(D. Minn. Nov. 17, 2010).  In *Furlow v. Belmar*, the Eighth Circuit explained the

constitutionality of arrests based on alert systems:

> [A] warrantless arrest prompted by a notice from one officer to another is
> unconstitutional unless:   (1) the arresting officer is able to make an
> independent finding of probable cause or (2) the arresting officer has been
> working closely with the officer who made the initial and valid probable
> cause determination . . . .

52 F.4th 393, 404-05 (8th Cir. 2022) (citation omitted) (analyzing the St. Louis County

Police Department's "Wanteds" alert system).  Put differently, if an arresting officer has

not been working closely with the issuing officer, the arresting officer must find probable

cause to arrest that is separate from the alert itself.  *Id.* at 403 ("Wanteds cannot provide a

sufficient basis to justify the arrest and prolonged detention of a suspect under the

Constitution.").

Applying *Furlow*'s holding to the KOPS alert system, KOPS alerts cannot be used

to arrest someone without an independent finding of probable cause unless the arresting

officer worked closely with the issuing officer and the issuing officer's probable cause

finding is valid.  The trooper and Risdall did not work closely together.  The trooper

called dispatch and dispatch contacted Risdall, but the trooper and Risdall never spoke

directly to one another.  (Doc. No. 47-3 at 21.)  This fails to meet the close relationship

requirement.  *See Furlow*, 52 F.4th at 402 (emphasizing the need for joint investigation).

So, when Perryman was arrested based only on Risdall's finding of probable cause,[11]

---

[11]    There is no dispute that by issuing a KOPS alert with a "pick up and hold"
designation, Risdall caused Perryman to be arrested.  Had the KOPS alert not been
issued, Perryman would not have been arrested by the state trooper.

with no independent finding of probable cause by the arresting officer, Perryman's constitutional rights were violated.

Defendants argue that Perryman's arrest was not based solely on the KOPS alert but also on the trooper's verification that Risdall believed he had probable cause, which then created probable cause to detain Perryman. (Doc. No. 60 at 8.) *Furlow* requires an independent finding of probable cause by the arresting officer, separate from the probable cause that the issuing officer had when issuing the KOPS alert. Mere verification by the arresting officer that the issuing officer believes there is probable cause to arrest is not an independent finding of probable cause.

While the Court finds a constitutional violation, it was not clearly established that Risdall could not issue a KOPS alert with the "pick up and hold" designation. *Voss* and *Furlow* explained that a separate finding of probable cause was necessary, but no court has explicitly decided that an officer cannot issue a "pick up and hold" KOPS alert. *Cf. Kisela v. Hughes*, 584 U.S. 100, 104 (2018) ("[P]olice officers are entitled to qualified immunity unless existing precedent 'squarely governs' the specific facts at issue." (quoting *Mullenix v. Luna*, 577 U.S. 7, 13 (2015))). Risdall is therefore entitled to qualified immunity.

Perryman's rights were violated when he was arrested based on the probable cause determination of only the issuing officer. However, Risdall is entitled to qualified immunity because it was not clearly established that he could not issue a "pick up and hold" KOPS alert. The Court therefore grants Defendants' motion for summary judgment as to Count V.

14

### B.    Defendant Bloomington

Perryman argues that Bloomington has an unofficial custom of using "pick up and hold" KOPS alerts as standalone probable cause for warrantless arrests without any official guidance and as arrest warrants.  (Doc. No. 51 at 22, 26.)

Even if no individual official is found personally liable for their conduct under a custom, the municipality may still be liable if there is an underlying constitutional violation.  *See Webb v. City of Maplewood*, 889 F.3d 483, 486-87 (8th Cir. 2018).  Here, even though the Court found that Risdall is entitled to qualified immunity for the issuance of the KOPS alert because it was not a clearly established violation, Bloomington may be liable for the custom of requiring only verification of the probable cause determination in a "pick up and hold" KOPS alert to arrest someone.

A municipality may be held liable under § 1983 if it, under color of law, subjects a person to deprivation of any right.  42 U.S.C. § 1983; *see Monell*, 436 U.S. at 690-91.  Municipal liability exists "only where the municipality *itself* causes the constitutional violation."  *City of Canton v. Harris*, 489 U.S. 378, 385 (1989).  Municipalities "are not vicariously liable under § 1983 for their employees' actions."  *Connick v. Thompson*, 563 U.S. 51, 60 (2011).  "[L]iability for a constitutional violation attaches only if the violation resulted from an official municipal policy, an unofficial custom, or a deliberately indifferent failure to train or supervise an official or employee."  *Tirado v. City of Minneapolis*, 521 F. Supp. 3d 833, 840 (D. Minn. 2021).  That policy, custom, or failure to train must be the "moving force" behind the constitutional violation.  *Bd. of Cnty. Comm'rs of Bryan Cnty. v. Brown*, 520 U.S. 397, 404 (1997).

Perryman's claims allege an unofficial custom.  An unofficial custom can be established through "a continuing, widespread, and persistent pattern of unconstitutional misconduct" that is "so pervasive among non-policymaking employees of the municipality that it effectively has the force of law." *Bolderson v. City of Wentzville*, 840 F.3d 982, 986 (8th Cir. 2016).  A plaintiff must also show "deliberate indifference to or tacit authorization of such conduct by the governmental entity's policymaking officials after notice to the officials of that misconduct." *Snider v. City of Cape Girardeau*, 752 F.3d 1149, 1160 (8th Cir. 2014).

Defendants argue that there is no widespread pattern of conduct because Perryman's arrest was an isolated incident.  (Doc. No. 45 at 27.)  An isolated incident of misconduct cannot, as a matter of law, establish a custom creating municipal liability under § 1983.  *Ulrich v. Pope County*, 715 F.3d 1054, 1061 (8th Cir. 2013).  But this was not an isolated incident.  Bloomington police issued 1,794 KOPS alerts in five years, of which, 331 were designated as "pick up and hold."  (Doc. No. 52-8 at 10-11; Doc. No. 59 ¶ 4.)  Bloomington employees testified that issuing KOPS alerts with a "pick up and hold" designation was enough to detain.  (*See* Doc. No. 55-8 at 40-41 (dispatcher testifying that some KOPS alerts can give probable cause to arrest if the officer says there is probable cause); Doc. No. 55-11 at 33 (officer testifying that KOPS alerts are issued with probable cause to stop and detain).)  That testimony combined with data on the use of KOPS alerts is sufficient to establish a pattern of using "pick up and hold" KOPS alerts as arrest warrants.

Defendants also argue that Perryman fails to show similarity. (Doc. No. 56 at 29-30.) An alleged unconstitutional action must be sufficiently similar to other conduct that is part of an alleged unconstitutional pattern. *See McGuire v. Cooper*, 952 F.3d 918, 923 (8th Cir. 2020). Bloomington's custom regarding KOPS alerts was to require verification of the alert to establish probable cause and arrest. (*See* Doc. No. 47-3 at 18.) As discussed, that mere verification is insufficient. Anyone arrested based only on the verification of a probable cause finding of one officer suffers the same constitutional violation as Perryman. The Court finds sufficient similarity.

The Court next finds that Bloomington was deliberately indifferent to this pattern and that it was the moving force behind Perryman's arrest.[12] Perryman argues that the lack of training on KOPS alerts proves that Bloomington has been deliberately indifferent, allowing officers to use "pick up and hold" KOPS alerts as arrest warrants. (Doc. No. 51 at 30-31.) Lack of training can be evidence of deliberate indifference. *See City of Canton*, 489 U.S. at 390. Bloomington's widespread use of KOPS alerts should have prompted training to ensure constitutional use of the system. Perryman also alleges that this unofficial custom was the moving force behind his arrest because, had Risdall

---

[12]    Defendants did not respond to Perryman's arguments on these issues in their response in opposition to Perryman's motion, nor in their reply in support of their motion. (*See* Doc. No. 56 at 27-30; Doc. No. 60 at 9-10.) The "failure to oppose a basis for summary judgment constitutes waiver of that argument," because the nonmoving party is responsible for demonstrating any genuine dispute of material fact that would preclude summary judgment. *Satcher v. Univ. of Ark. at Pine Bluff Bd. of Trs.*, 558 F.3d 731, 735 (8th Cir. 2009). Defendants therefore waived any arguments as to deliberate indifference and moving force.

not issued a KOPS alert, Perryman would not have been arrested.  (Doc. No. 51 at 31.)

As discussed, that fact is not disputed.  (*Supra* note 11.)

Perryman has established that Bloomington has a widespread pattern of using

KOPS alerts as arrest warrants, which was the moving force behind the violation of his

rights, and that Bloomington is deliberately indifferent to that practice.  Perryman has

met his burden to show *Monell* liability.  Defendants' motion for summary judgment as

to Count III is denied.

## V.   Counts VI and VII:  State Tort Law Claims

Perryman additionally alleges false arrest and false imprisonment in violation of

state tort law.  (Compl. ¶¶ 192-219.)  Under Minnesota law, a defendant may be liable for

a false arrest if the plaintiff can prove that (1) defendant performed an arrest and (2) the

arrest was unlawful.  *Lundeen v. Renteria*, 224 N.W.2d 132, 146 (Minn. 1974).  Risdall

invokes official immunity for these claims.  (Doc. No. 45 at 29.)

"[U]nder Minnesota law[,] a public official is entitled to official immunity from

state law claims when that official is charged by law with duties that require the exercise

of judgment or discretion."  *Johnson v. Morris*, 453 N.W.2d 31, 41 (Minn. 1990).

Identification of a suspect and finding of probable cause are discretionary actions.  *See*

*Yang v. City of Minneapolis*, 607 F. Supp. 3d 880, 900 (D. Minn. 2022) (noting that

making an arrest is the type of discretionary action protected by official immunity).  To

overcome official immunity, Perryman must prove that Risdall acted with malice.  *Id.*

at 899 ("When a public official's conduct is discretionary, the conduct is not immune

from liability if the official 'is guilty of a wilful or malicious wrong.'" (quoting *Rico v.*

18

*State*, 472 N.W.2d 100, 107 (Minn. 1991))).  Malice in this context looks at the

reasonableness of an official's conduct.  "An act is not malicious if it:  (1) was

objectively legally reasonable, (2) was performed in good faith, or (3) did not violate a

clearly established right."  *Mitchell v. Dakota Cnty. Soc. Servs.*, 959 F.3d 887, 902 (8th

Cir. 2020).

      Defendants argue the Risdall's actions meet all three of these exceptions.  (Doc.

No. 45 at 31-32.)  The Court has found a genuine dispute as to whether Risdall's

investigation was reasonable and therefore whether he violated a clearly established right,

so Defendants failed to prove the first and third prongs.  However, Defendants have

proven that Risdall acted in good faith.  As soon as exculpatory information was brought

to his attention, Risdall shared that information with HCAO.  Perryman responded only

to the unreasonableness of Risdall's conduct, failing to address bad faith.  (Doc. No. 54

at 29-30.)  Therefore, the Court finds that Risdall acted in good faith and is entitled to

official immunity.

      If an official is protected by official immunity, their employer is generally entitled

to vicarious official immunity.  *See Vezzetti v. City of Minneapolis*, No. A24-0898, 2025

WL 251936, at *6 (Minn. Ct. App. Jan. 21, 2025); *Aden ex rel. Aden v. City of

Bloomington*, 128 F.4th 952, 961 (8th Cir. 2025).  Perryman notes that vicarious official

immunity should not be extended when doing so would "reward" the municipality for

failing to comply with the law, arguing that extending vicarious official immunity would

reward Bloomington for allowing warrantless arrests via the KOPS alert system.  (Doc.

No. 54 at 31-32 (quoting *Meier v. City of Columbia Heights*, 686 N.W.2d 858, 866

(Minn. Ct. App. 2004)).)  Because Bloomington's motion as to Count III was denied, Bloomington will not be "rewarded" and will still be forced to explain the constitutionality of its actions.  The Court therefore grants Defendants' motion as to the state tort law claims against both Risdall and the Bloomington.

## VI.    Count VIII:  Minnesota Constitutional Claim

Lastly, Perryman asserts a claim against all Defendants under Article I, Section 10 of the Minnesota Constitution.  (Compl. ¶¶ 220-27.)  Because Perryman's federal claims are coextensive with his state constitutional claim, the Court need not decide the issue of a private right of action under the state constitution.  *See R.S. ex rel. S.S. v. Minnewaska Area Sch. Dist. No. 2149*, 894 F. Supp. 2d 1128, 1146 (D. Minn. 2012) ("[A]ny relief available under the Minnesota Constitution is likely to be coextensive with the relief available under § 1983.").  Defendants' motion for summary judgment is granted as to Perryman's state constitutional claim.

## CONCLUSION

There is a genuine factual dispute as to the reasonableness of Defendant Detective Andrew Risdall's investigation that led to Plaintiff Kylese Perryman's arrest.  Risdall is therefore not entitled to qualified immunity as to Perryman's federal claims of false arrest and false imprisonment, and both Plaintiff and Defendants' motions as to the claims against Risdall are denied.  However, Defendant City of Bloomington is not liable under *Monell* for false arrest or false imprisonment.  Defendants' motion as to the false arrest and false imprisonment claims against Bloomington is granted.

As to the state law claims for false arrest and false imprisonment, Risdall is entitled to official immunity because Perryman failed to demonstrate bad faith. Bloomington is therefore entitled to vicarious official immunity. Defendants' motion as to the state tort claims is granted. Additionally, Perryman's state constitutional claim is coextensive with his federal constitutional claims, so Defendants' motion as to the state constitutional claims is granted.

Perryman also alleges that his rights under the Particularity Clause were violated. Perryman's constitutional rights were violated because he was arrested without an independent finding of probable cause by the arresting officer. Risdall is entitled to qualified immunity because it was not clearly established that he could not issue "pick up and hold" KOPS alerts. Defendants' motion as to Risdall's alleged violation of the Particularity Clause is granted. However, the City of Bloomington may still be liable under *Monell*. Defendants' motion as to the Particularity Clause *Monell* claim is denied.

## ORDER

Based upon the foregoing and the record in this case, **IT IS HEREBY ORDERED** that:

1.    Defendants' motion for summary judgment (Doc. No. [43]) is **GRANTED IN PART AND DENIED IN PART** as follows:

    a.    The motion is granted as to Counts I and II against Defendant Bloomington.

    b.    The motion is denied as to Counts I and II against Defendant Risdall. Counts I and II remain solely against Defendant Risdall.

21

c.      The motion is denied as to Count III.

d.      The motion is granted as to Counts IV, V, VI, VII, and VIII.

2.      Plaintiff Kylese Perryman's motion for partial summary judgment (Doc. No. [49]) is **DENIED**.

3.      Counts IV, V, VI, VII, and VIII are **DISMISSED WITH PREJUDICE**.

4.      Plaintiff's claims as to Defendants Does 1-10 and Does 11-20 are **DISMISSED WITH PREJUDICE**.

5.      Defendants Does 1-10 and Does 11-20 are **TERMINATED** as parties in this case.

6.      Defendants' request for costs and disbursements along with their motion for summary judgment is **DENIED**.


Dated:  September 5, 2025                    s/Donovan W. Frank
                                            DONOVAN W. FRANK
                                            United States District Judge